DONOVAN CONSTRUCTION CO., a corporation; James Construction Co., a corporation; and Wismer & Becker, a partnership consisting of Edwin W. Wismer and Hugo E. Becker, individually and as joint venturers doing business as Donovan-James-Wismer & Becker, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, a Corporation, Defendant.

Civ. No. 2338.

United States District Court
D. Minnesota, Third Division.

Aug. 5, 1955.

Kenneth M. Owen and Peter Dorsey (of Dorsey, Colman, Barker, Scott & Barber), Minneapolis, Minn., appeared in behalf of defendant in support of said motion.

Mandt Torrison and Jerome B. Simon, St. Paul, Minn. (Bundlie, Kelly & Maun, St. Paul, Minn., of counsel), appeared in behalf of plaintiffs in opposition thereto.

NORDBYE, Chief Judge.

Defendant entered into a contract in April, 1946, with the United States Bureau of Reclamation to manufacture certain electrical generators to be used in connection with the construction of the Davis Dam on the Colorado River. The various units included in the contract were shipped to Kingman, Arizona, between October, 1948, and February, 1949. In September, 1949, the Bureau contracted with plaintiffs as joint venturers to install the electrical generators supplied by defendant. Plaintiffs contended in their original complaint that certain thrust bearings in the units supplied by defendant were defective and that it was necessary for them to disassemble and reinstall the generator equipment several times before the equipment could be made to operate. Some parts had to be shipped back to defendant's plant for the performance of certain repair work. Plaintiffs contended that, by reason thereof, they were delayed in the performance of their contract with the Government, that their costs in making the installations were increased substantially, and that therefore they lost certain anticipated profits in the performance of their contract. The original complaint alleged negligence only in the manufacture of the thrust bearings, and plaintiffs contended that their damage and injury "was caused solely by the negligence of defendant in manufacturing and supplying for installation the aforesaid negligently constructed and defective turbine and generator equipment." There are no allegations in the original complaint as to any negligence on the part of the engineers furnished by defendant to supervise the installation and operation of the units.

After the parties hereto were at issue, plaintiffs moved to amend their complaint by adding Paragraphs VI to IX, inclusive, thereto. The proposed amendment, which the Court allowed, set forth certain covenants, warranties and guaranties which defendant made to the Government in the April, 1946, contract in connection with the manufacture and construction of the turbine and generator equipment and that defendant would furnish engineering advice and personnel for the purpose of the final installation and testing of the equipment. Plaintiffs allege in these paragraphs that defendant's warranties and covenants with respect to such turbine and generator equipment were made partly for their benefit as installing contractors. The amending paragraphs allege that, because of the delay occasioned by defendant's breach of certain warranties, guaranties and covenants with reference to the equipment furnished by defendant and the failure of defendant's supervising engineers to make timely discovery thereof, plaintiffs were delayed in the performance of their contract with the Government and were unable to complete the performance of their contract until June 26, 1951, to their damage in the sum of $146,517.82. This is the same, identical amount of damages claimed in the previous cause of action based upon defendant's negligence. Therefore, there are in effect two causes of action alleged—one based upon tort and the other upon contract. The parties hereto have so construed the amended complaint, and obviously that was the intent of the pleader in proposing the amending paragraphs VI to IX, inclusive.

The position taken by defendant on this motion with respect to the alleged negligence is that a manufacturer of a product has no duty to use due care with respect to manufacturing and supplying its product to anyone other than its contract vendee. It concedes that, for the purpose of this motion, it was negligent in the manufacture of these thrust bearings, but it contends that the ordinary rules regarding liability for negligent conduct are not applicable herein, and it seeks to invoke what it terms to be the general rule that the liability of a manufacturer for its negligence is restricted by the contractual requirements of privity. It contends that plaintiffs cannot recover unless they bring their cause of action within one of the recognized exceptions to the general rule of non-liability and that these exceptions have not, and cannot, be extended to permit recovery for mere economic loss as distinguished from injury to life and limb or physical injury to property.

The defendant emphasizes the decision of the Court of Appeals of this Circuit in Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865. No purpose will be served in attempting to discuss the exceptions noted to the general rule announced by Judge Walter Sanborn in the Huset case, nor to discuss Judge Cardozo's landmark decision in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, wherein that court departed from, or at least extended and modernized the limited doctrine of a manufacturer's liability as noted in the Huset case. Neither is it necessary to discuss the subtle and fine distinctions sometimes noted by courts in determining whether the article manufactured is inherently dangerous or imminently dangerous. Obviously, the failure of the thrust bearings in the generator equipment to operate properly by reason of negligent construction could not possibly be considered as an instrument dangerous to life, limb or property, and plaintiffs make no such contention. It is not contended that the alleged negligence caused any physical harm to the person or property of the plaintiffs. Undoubtedly there is confusion in the many decisions which have discussed this subject. The Huset case may now be entirely outmoded and MacPherson v. Buick Motor Co., supra, and the multitude of cases which have followed it may well have pronounced broader and more realistic principles of liability for negligent manufacturers, Carter v. Yardley & Co., Ltd., 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559; Todd Shipyards Corp. v. United States, D.C.D.Me.1947, 69 F.Supp. 609; Todd

Shipyards Corp. v. Harborside Trading & Supply Co., D.C.E.D.N.Y., 1950, 93 F.Supp. 601; E. I. Dupont de Nemours & Co. v. Baridon, 8 Cir., 1934, 73 F.2d 26; Mannsz v. Macwhyte Co., 3 Cir., 1946, 155 F.2d 445; Ellis v. Lindmark, 1929, 177 Minn. 390, 225 N.W. 395; but see A. J. P. Contracting Corporation v. Brooklyn Builders Supply Co., 1939, 171 Misc. 157, 11 N.Y.S.2d 662, and Sperling v. Miller, Sup.App.T., 1944, 47 N.Y.S.2d 191; Blich v. Barnett, 1951, 103 Cal.App. 2d Supp. 921, 229 P.2d 492; National Iron & Steel Co. v. Hunt, 1924, 312 Ill. 245, 43 N.E. 833, 34 A.L.R. 63; Buckley v. Gray, 1895, 110 Cal. 339, 42 P. 900, 31 L.R.A. 862; Ultramares Corp. v. Touche, 1931, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139, but plaintiffs have not found any well-considered decisions that permit recovery against a manufacturer by a third party on the basis of a manufacturer's negligence in absence of a showing that the article in question was negligently manufactured and that it was reasonably foreseeable by the manufacturer that the article, if used, would cause physical injury to persons or property of others. And the recognition of that principle of liability of manufacturers lays aside any question of privity and any distinction as to articles manufactured which are inherently dangerous, imminently dangerous, or whether the article merely possesses harmful potentialities to persons or property when constructed or manufactured carelessly. However, plaintiffs' inability to find any support for their claim based upon mere negligent is due to the fact that the law does not spread its protection to those who have sustained a loss such as allegedly occurred to plaintiffs in absence of an intentional wrong. Plaintiffs assert no property interest in the allegedly defective bearings. Nor do they contend that any of their own property has been physically injured by defendant's conduct, and there is no assertion that defendant intentionally caused any damage to plaintiffs. They merely contend (Paragraph IV):

"That the turbine and generator equipment, to be installed by plaintiffs under the said contract, was supplied to the United States of America by the defendant; that it was known to the defendant that the installation of said equipment required the expenditure of time, labor and materials and the use of construction equipment; that it was further known to the defendant that plaintiffs had contracted with the United States of America to make the installation of said turbine and generator equipment, and defendant knew or should have known that, by supplying defective and negligently constructed turbine and generator equipment, defendant would delay plaintiffs' completion of the installation of such equipment and cause damage to plaintiffs by increasing the costs of performance of plaintiffs' said contract with the United States of America."

And further, that defendant negligently supplied turbine and generator equipment manufactured in a negligent and faulty manner and constructed with defective and imperfect materials and that, by reason thereof, the equipment broke down on several occasions after it was installed by plaintiffs. The complaint then further alleges that, because of the breakdown, delays occurred whereby plaintiffs were unable to finish their entire work by April 7, 1951, and were delayed in their completion until June 26, 1951. In effect, therefore, plaintiffs contend that their contract with the United States was negligently interfered with by defendant to plaintiffs' damage.

At the outset, it should be made clear that no distinction is to be made between the position of one who negligently interferes with another's contract causing the breach, and the negligent interference with a contract relation which makes the performance of the contract of less value to the promisee. So far as the question as to whether plaintiffs' complaint states a cause of

action upon which recovery may be had, the interferences are both on the same footing. Johnson v. Gustafson, 201 Minn. 629, 632, 277 N.W. 252, cited in 84 A.L.R. 52. The difficulty with plaintiffs' complaint, so far as the tort action is concerned, arises because as an indispensable condition precedent to liability by reason of interference with the performance of one's contract to the damage of the promisee, an *intention* to effect such result by the interferor must be alleged. Mere negligence in interfering with another's contract rights will not sustain the cause of action for damages. Contrary to the allegations in Paragraph IV of the complaint, it indisputably appears that plaintiffs' contract was not in existence when defendant manufactured and delivered to the Government the generator units in question under its contract of April, 1946. Moreover, here there cannot be any contention or claim that defendant had knowledge of plaintiffs' contract when it entered into its contract with the Government and when it delivered the various units to the Davis Dam. That there was no intentional invasion of plaintiffs' contract rights not only unequivocally appears, but it is not asserted. Consequently, so far as the tort phase of plaintiffs' claim is concerned, it appears that the alleged negligence occurred in the manufacture and construction of the generator equipment months before plaintiffs entered into any contractual relation with the Government for the assembly of such units. There are a multitude of cases which sustain the principle that, as an indispensable condition precedent to liability for interference with the performance of one's contract, there not only must be knowledge of the contract, but there must be an intentional interference therewith. Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290; Baruch v. Beech Aircraft Corp., 10 Cir., 1949, 175 F.2d 1; New York Trust Co. v. Island Oil & Transport Corp., 2 Cir., 1929, 34 F.2d 649; The Federal No. 2, 2 Cir., 1927, 21 F.2d 313; Kelly v. Central Hanover Bank & Trust Co., D.C. S.D.N.Y., 1935, 11 F.Supp. 497, 513, reversed on other grounds, 2 Cir., 1936, 85 F.2d 61; Tipton v. Burson, 1951, 73 Ariz. 144, 238 P.2d 1098; Dewey v. Kaplan, 1937, 200 Minn. 289, 274 N.W. 161; Brink v. Wabash R. Co., 1901, 160 Mo. 87, 60 S.W. 1058, 53 L.R.A. 811; see Twitchell v. Glenwood-Inglewood Co., 1915, 131 Minn. 375, 155 N.W. 621; see Cat's Paw Rubber Co. v. Barlo Leather & Findings Co., D.C.S.D.N.Y., 1951, 12 F.R.D. 119, 121; Phillips v. Belding Heminway, D.C.S.D.N.Y., 1943, 50 F.Supp. 1015, 1019; see Prosser, Torts 991–996 (1941); 30 Am.Jur. Interference § 22; Note, 26 A.L.R.2d 1227, 1246. This is also the view adopted by the American Law Institute. See Restatement, Torts, § 766, comment d.

Plaintiffs' contention as set forth in Paragraphs VI to IX of their amended complaint wherein it is asserted that they are third party beneficiaries of the covenants, warranties and guaranties made by defendant to the Government is likewise untenable. In determining whether a third party has the right to enforce covenants of a contract to which he is not a party, one, of course, must look to the intent of the parties. Although the contract between the defendant and the Government provided that the generators to be furnished by the defendant would be installed by the Government, it is entirely probable that the parties recognized that the Government might hire other private contractors to make the installation. However, there is an absence of any suggestion in the contract between defendant and the Government that any warranties or guaranties contained therein were for the benefit of any other contractor which the Government might engage to make the installation. The following paragraphs of the contract between the Government and defendant are the pertinent provisions to which the Court is referred:

"Article 2. Changes.—Where the supplies to be furnished are to be specially manufactured in accordance with drawings and specifications, the contracting officer may at any time, by a written order, and

without notice to the sureties, make changes in the drawings or specifications, except Federal Specifications. Changes as to shipment and packing of all supplies may also be made as above provided. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly."

Sections 7, 20 and 22 of the special conditions:

"7. The requirement.—It is required that there be furnished and delivered f.o.b. cars at Kingman, Arizona, complete in accordance with these specifications and the drawings listed in paragraph 10 hereof, five 45,000–kv.–a., unity-power-factor, 94.7-r.p.m., 13,800-volt, three-phase, 60-cycle, vertical-shaft, alternating-current generators, complete with thrust bearings, upper and lower guide bearings, surface coolers, main exciters, and pilot exciters, for the Davis power plant, Davis Dam project, Arizona-Nevada. The generators will be installed by the Government.

"20. Workmanship.—All work shall be performed and completed in a thorough, workmanlike manner and shall follow the best modern practice in the manufacture of high-grade machinery, notwithstanding any omissions from these specifications or drawings.

"22. * * * Acceptance of apparatus or the waiving of inspection thereof shall in no way relieve the contractor of the responsibility for furnishing apparatus meeting the requirements of these specifications.

"Article 26. Failure to meet guaranties and requirements of specifications.—Should the factory or field tests or the operation of any piece of apparatus under service conditions show that it does not meet the guaranties and/or the require-

ments of these specifications, it shall be optional with the contracting officer to accept the apparatus or reject it and direct the contractor to at once proceed to furnish such new parts as may be necessary to make it meet the guaranties and requirements. All expense of furnishing and installing new parts or makng alterations to existing parts and of tests made necessary by failure of the apparatus to meet the guaranties and other requirements of the specifications shall be borne by the contractor: Provided, That any material or machinery not furnished by the contractor, which must be removed to give access to the apparatus furnished by the contractor, will be removed and replaced by the Government without cost to the contractor."

Section 50 of the general conditions:

"50. Responsibility, time, and traveling expenses.—The Government may require the contractor to furnish one or more competent erecting engineers to supervise and be responsible for the erection, starting, and operation of the apparatus until the field tests are completed. The Government may also require the contractor to furnish competent mechanics skilled in their various trades to assist the erecting engineers in the foregoing work. For the services of such erecting engineers and/or mechanics the contractor will be paid the amounts per day, including Sundays and national legal holidays, stated in the schedule, for each erecting engineer and/or mechanic. The payment shall cover the entire period of time that such erecting engineers and/or mechanics are in the service of the Government, including the time required by them to travel by the most direct rail route to site of erection and return."

It is in these paragraphs of the contract that plaintiffs must find the bases for their position that they are either donee or creditor beneficiaries. As this Court pointed out in McCulloch

v. Canadian Pacific Railway Co., D.C., 53 F.Supp. 534, 542,

"* * * Donee and creditor beneficiaries differ only with respect to the factual situations to which they apply; that is, the donee beneficiary contract embraces the situation in which the relationship between the promisee and beneficiary is that of donor-donee, i. e., the performance received by the beneficiary from the promisor is in the nature of a gift. The creditor beneficiary contract embraces the situation in which the relationship between the promisee and the beneficiary is that of debtor and creditor, i. e., the performance is received by the beneficiary from the promisor in satisfaction of an actual or supposed obligation owed to him by the promisee. See Restatement of Contracts, Section 133."

It would seem that under no possible theory can it be contended that plaintiffs here were donee beneficiaries, and further, it seems equally impelling that the warranties and covenants expressed in the quoted portions of the contract between defendant and the contractor were intended solely for the Government's benefit and not for other contractors as third party beneficiaries. Moreover, in determining the intent we must look to the situation as it existed at the time the contract between the Government and defendant was executed. McCulloch v. Canadian Pacific Ry. Co., supra, 53 F.Supp. at page 542. The formal contract between defendant and the Government was dated June 29, 1942, but by reason of the War it was not entered into until April 27, 1946. The contract between plaintiffs and the Government was dated September 22, 1949. The Supreme Court of Minnesota in Clark v. P. N. Hennessey Construction Co., 122 Minn. 476, 478, 142 N.W. 873, 874, in a factual situation somewhat analogous to the present case, but more favorable to the claimant, made this statement:

"To authorize a stranger to a contract to sue thereon, it must appear that the promisor assumed and undertook to perform for the promisee some duty or obligation due from the promisee to such stranger and thereby relieve the promisee therefrom. (Citing cases.) It must have been made directly and primarily for that purpose. If 'made primarily in the interest and for the benefit of the parties' to the contract, it does not give a right of action to a stranger thereto, although its performance may result in an accidental benefit to him."

Here, however, the provisions of the warranties, guaranties and covenants in the contract between the Government and defendant not only appear to be primarily for the benefit of the promisee, but the language is bereft of any basis for holding that any other person was to benefit thereby. At most, any persons who entered into a contract with the Government for the installation of these units some three years later were mere incidental beneficiaries. The decision of the Government to enter into a contract with the plaintiffs in September, 1949, for the installation of the generator equipment and the Government's requirement that the General Electric engineers supervise the installation as provided in the contract of April, 1946, does not buttress plaintiffs' assertion that it was the intention of the parties that the covenants and warranties of the April, 1946, contract were made for their benefit. It is significant that the Government was not required to hire General Electric engineers to supervise the installation. If it did so, however, then such engineers were to be paid the specified per diem as provided in Section 50 of the contract.

This memorandum order should not be unduly extended in attempting to collate the many decisions on the subject of third party beneficiaries. In passing, it may be noted that the Second Circuit disposed of a factual situation far more favorable to the plaintiff than the present one with a terse line, merely holding that the contract provisions there considered were solely for the Government's benefit.

See Brotherton v. Merritt-Chapman & Scott Corp., 2 Cir., 1954, 213 F.2d 477. The decision of LaMourea v. Rhude, 1940, 209 Minn. 53, 295 N.W. 304, includes examples of incidental beneficiaries which are strikingly comparable to the present situation, and see examples in Restatement of Contracts, Sections 133 to 147. The conflict of laws problem does not appear to be present. Apparently the contract between the Government and defendant was entered into in the State of Colorado and to be performed in the State of Arizona. No decision from either state has been cited which supports plaintiffs' position herein as a third party beneficiary. Both states apparently recognize that incidental beneficiaries to contracts have no contract rights therein. Cripple Creek State Bank v. Rollestone, 1921, 70 Colo. 434, 202 P. 115; M. E. Smith & Co. v. Wilson, 8 Cir., 1925, 9 F.2d 51; Treadway v. Western Cotton Oil & Ginning Co., 1942, 40 Ariz. 125, 10 P.2d 371.

As stated, plaintiffs' rights as third party beneficiaries must be determined as of the time the contract between the Government and the defendant was entered into. No showing is made here why that principle should not apply, and moreover, no showing is made that any additional facts would be developed at the trial which would negate the fact that plaintiffs are anything but incidental beneficiaries. The contract between the Government and this defendant will be searched in vain for any covenants which imply that defendant has undertaken to discharge obligations of the Government to these plaintiffs. In view of the uncontradicted circumstances disclosed by this motion, the Court should not embark on a long and protracted trial which, so far as this showing indicates, would result in a judgment for defendant. In other words, there is no material issue of fact to be determined, and defendant is entitled, therefore, to a summary judgment in its favor. It is so ordered. Let judgment be entered accordingly.

An exception is allowed.