Eder, J.
Defendants Wright Aeronautical Corporation and its successor, Curtiss-Wright Corporation (herein called Curtiss-Wright) move jjbn the complaint, their answer and plaintiff’s bill of particulars^for judgment on the pleadings dismissing the third cause of action on the ground that it fails to state a cause of action.
*478 In the first two causes of action — not here involved ■ — • plaintiff Trans World Airlines, Inc. (herein called TWA) seeks damages of $3,000,000 as the result of a crash of one of its airplanes near Cairo, Egypt, in August, 1950. These two causes are against Lockheed Aircraft Corporation (manufacturer and seller of the airplane), United Aircraft Corporation (manufacturer of the propellers on said plane), and Curtiss-Wright (manufacturer of the engines on said plane).
The third cause of action, now under attack, alleges against Curtiss-Wright alone damages in T W A’s use of other engines (wholly unrelated to the Egyptian crash) manufactured by Wright Aeronautical Corporation and contained in airplanes purchased by T W A from Lockheed Aircraft Corporation. Damages of $650,000 from September^T.919, to 'date "of complaint, September, 1952, resulting from Wright Aeronautical’s negligence are claimed, in that, due to latent defects in said engines, the engines ‘ failed to operate while in regular service ” and “ made the aeroplanes on which they were installed imminently dangerous to life and property.” T W A’s bill of particulars lists fifty-five such engines. In answer to the request for a statement of “ the items comprising the alleged damage of $650,000 ” and a statement with respect to each engine of ‘ ‘ the items of damage therein claimed ’ ’, the bill referred to no damage except to the engines themselves, claiming only the ‘ ‘ cost to plaintiff of making the necessary repairs to the engines to eliminate the latent defects caused by the negligence of defendant Wright Aeronautical Corporation and correcting the damage to the engines resulting from_these latent defects.’’ — ........" '
TWA could, of course, have claimed such damages from Lockheed for breach of the warranty arising from the^ purchase of the airplanes, and Lockheed in turn could have claimed over against Curtiss-Wright for breach of the warranty arising from its, purchase of the engines. It did not choose to do so, and we may not concern ourselves with the reason therefor. The question here is: May it sue directly the manufacturer, with whom it has no privity of contract, for damage limited to the allegedly defective product itself? The answer requires an analysis of the authorities in the field of liability imposed on a manufacturer in a direct suit by the ultimate user, wherein MacPherson v. Buick Motor Co. (217 N. Y. 382) stands as a landmark.
It had always been the general rule that the only person liable for damages caused by defects in goods sold was the imme-
*479 diate seller by virtue of express or implied warranty to the immediate buyer. Any other rule, it was felt, would hamper the enterprising manufacturer whose ingenuity was the chief factor in causing the economy to expand. It would have made it “ difficult to measure the extent of his responsibility, and no; prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the; parties immediately concerned” (Curtin v. Somerset, 140 Pa. 70). This general rule is the doctrine of privity of contract.
The assault upon this “citadel of privity” (Ultramares' Corp. v. Touche, 255 N. Y. 170,180) began even before MacPherson v. Buick Motor Co. (217 N. Y. 382, supra). Manufacturers of dangerous articles were held liable to subvendees having no privity of contract with them for defects therein causing personal injuries (Thomas v. Winchester, 6 N. Y. 397; Devlin v. Smith, 89 N. Y. 470; Torgesen v. Schultz, 192 N. Y. 156; Statler v. Ray Mfg. Co., 195 N. Y. 478). These cases were cited and reviewed by Judge Cardozo in MacPherson (supra), holding an automobile manufacturer liable for personal injuries to one who had purchased from one of its dealers a car which collapsed while he was in it. The doctrine imposed direct liability for articles which were inherently dangerous when negligently made.
MacPherson referred to, but did not answer, the question of the liability of the manufacturer of a component part of the article. That remained for Smith v. Peerless Glass Co. (259 N. Y. 292, 295), wherein a “ broad rule of liability ” was applied to any negligent manufacturer, whether of a component part or of the assembled article, shown to be responsible for the injury sustained.
The Court of Appeals did not, however, pass upon the question of whether property damaged by the defective article, as distinguished from personal injuries, could be recovered in a direct suit against the manufacturer until 1934 (Genesee Co. Patrons Fire Relief Assn. v. Sonneborn Sons, 263 N. Y. 463). The court said, “ To hold that an owner of a building injured by an explosion and fire caused ¡by itke use of the material could recover for his personal injury but the could not recover for the damage to his clothing or the destruction of his building would be anomalous ” (p. 469j.
The, specific question here involved — whether the manufacturer may be sued in negligence where the -damage to the ultimate user is limited to the article itself ¡and affects no other property — was presented in A. J. P. Contr. Corp. v. Brooklyn Builders Supply Co. (171 Misc. 157, affd. without opinion 258 *480 App. Div. 747, affd. 283 N. Y. 692). The affirmance without opinion does not necessarily imply approval of the entire opinion below and the parties here disagree as to its meaning and limits. In that case plaintiffs had purchased through a supplier building laths manufactured by defendants. After installation they discovered that the laths failed to retain plaster when applied, thus making it likely that plaster might thereafter fall and cause injury. Plaintiffs sued in negligence for the cost of removing the defective laths and installing new laths. The court dismissed the complaint as against the manufacturers, saying (171 Misc. 157, 159): “ The duty of the manufacturer for breach of which liability attaches runs only to those who suffer personal or property injury as a result of either using or being within the vicinity of use of the dangerous instrumentality. * * * The laths described in the complaint did not cause physical harm to the person or property of the plaintiffs. The expenditure of moneys required for their replacement is not the character of harm contemplated by the rule.” To the same effect was Sperling v. Miller (47 N. Y. S. 2d 191) dismissing the complaint against the manufacturer of the purchaser of a carpet ^which was claimed to be defectively made, the^ action being for repairs and replacement expenses. In both cases, of course, ^ plaintiffs could have sued the direct seller for breach of warranty, but were not permitted to sue the manufacturer directly.
TWA argues that these cases are not in point when the articles involved are engines used in airplanes with foreseeable potential for catastrophic disaster and the facts are that parts of the engines have actually been worn away as a result of latent defects while in regular flight. The duty of such a manufacturer being greater, the liability, it is urged, should be more extensive.
TWA also contends that it is anomalous to say, as Curtiss-Wrigkt has, that the MacPherson doctrine (217 N. Y. 382, supra) may not be extended to cases involving damage only to the ("defective article itself. While Quackenbush v. Ford Motor Co. (167 App. Div. 433), cited by T W A, does impose liability for j damage to the thing itself, a careful analysis reveals that it does not support T W A’s position in this case but requires, in ¡ my opinion, the granting of. Curtiss-Wright’s motion.
” It seems to me that Quackenbush points the way to a definitive statement on the question here posed. It was this court which had just decided MacPherson v. Buick Motor Co. (160 App. Div. 55), later affirmed by the Court of Appeals (217 N. Y. 382, supra), and it applied the same principle to these new facts. *481 Jane Quackenbush sued Ford for injury to the car bought by her by reason of Ford’s alleged negligence in failing to equip it with proper brakes. She alleged inability to control the car, resulting in its going over an embankment. Ford moved for judgment on the pleadings, urging that a manufacturer could not be held liable in negligence to the ultimate purchaser merely because an inferior car collapsed under ordinary use. Denial thereof was affirmed, the court saying that it saw no. well-founded ground for distinction between personal injury and damage to the machine itself bought by plaintiff. Ford had conceded liability for personal injuries but not for injury to the car. This argument, the court pointed out, meant that if the car went over the embankment and plaintiff were hurt, she could recover from Ford; but that, if she managed to jump out, she could not recover from Ford the damage to her car. The court then stated,.at.page" j 436,.the.rule.which, I deem, sound:. “ the manufacturer’s duty ¡ depends not upon the results of the accident but upon, the fact ¡ that his.failure to properly construct the. car resulted in the f accident.” Quackenbush thus holds that where an accident has / occurred, the manufacturer may be sued directly in negligence \ despite.the absence of privity even though the damage resulting | is limited to the article itself. -■
We now come to a vital distinction pointed out in Quackenbush, a distinction which, in my view, solves the problem and highlights the A. J. P. Contr. Corp. (171 Misc. 157, supra) and Sperling (47 N. Y. S. 2d 191, supra) cases. The court said, at page 437, that “ the plaintiff in the present case * * * would, have been entitled to have the defective brake materials replaced with proper ones, we may assume, if she had merely discovered the defect, and no accident had resulted. That might have satisfied the implied warranty ”. And, of course, such suit could only be against the seller. But the court held, when plaintiff sustained damages as the result of an accident caused by Ford’s sending out a defective car, she was entitled to recover such damages directly from Ford in her capactiy as a member of the public ‘ ‘ because of the failure of the manufacturer to perform a duty which he owed ” to her in common with the public generally (supra, p. 437).
Until there is an accident, there can be no loss arising from breach of this duty, i.e., as a result of negligence (as distinguished from warranty). “ Though negligence may endanger") the person or property of another, no actionable wrong is com- (_ mitted if the danger is averted ” (Schmidt v. Merchants Desp. Transp. Co., 270 N. Y. 287, 300).
*482 The damage asserted by T W A is for replacement cost of allegedly inferior engines — a matter of qualitative inadequacy in a product purchased from Lockheed, a proper subject for a claim of breach of warranty, pure and simple. It is true that when the engines ‘ ‘ failed to operate ’ the planes became ‘ ‘ imminently dangerous ’ ’; but the danger was ‘ ‘ averted ’ ’. There was no accident. The malfunctioning of the engines had not yet turned into a misadventure.
TWA was not without remedy. Until an accident attributable to a defective engine happened, its only remedy was to hold Lockheed, the seller, for breach of warranty. It is only ] when the danger inherent in a defectively made article causes I an accident that a cause of action against the manufacturer also [ arises. ' ™ “ “
If the ultimate user were allowed to sue the manufacturer in negligence merely because an article with latent defects turned out to be bad when used in “ regular service ” without any accident occurring, there would be nothing left of the citadel of privity and not much scope for the law of warranty. There seems to me to be good reason for maintaining that, short of an accident, the citadel should be preserved. Manufacturers • would be subject to indiscriminate lawsuits by persons having no contractual relations with them, persons who could thereby escape the limitations, if any, agreed upon in their contract of purchase. Damages for inferior quality, per se, should better be left to suits between vendors and purchasers since they depend on the terms of the bargain between them.
The third cause of action must, therefore, be held not to state a cause of action against Curtiss-Wright and the motion accordingly granted. It appears, however, that the amended answer (which must, of course, be considered on this motion) alleges that ‘ certain of the engines referred to in the third cause of action were sold by defendant Curtiss-Wright directly to plaintiff ”. Curtiss-Wright’s brief states that, in fact, two were. As to these, if properly alleged, TWA would have a sufficiently pleaded cause of action either in negligence or breach of warranty, at its choice, because privity does exist as to them. Since the present complaint alleges all engines to have been purchased from Lockheed, it is inappropriate. Accordingly, leave is granted to serve within ten days after service of a copy of the order hereon an amended third cause of action against CurtissWright with regard to such of the fifty-five engines as T W A will now allege it purchased direct from Curtiss-Wright. Settle order.