(No. 54440.—

MOORMAN MANUFACTURING COMPANY, Appellee, v. NATIONAL TANK COMPANY *et al.*, Appellants.

*Opinion filed February 19, 1982.*

70

SIMON, J., specially concurring.

Kent R. Schnack, of Loos & Schnack, and John W. Wooleyhan, of Wooleyhan, Nielson, & Adams, of Quincy, for appellants.

Robert W. Cook and Mark A. Drummond, of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellee.

JUSTICE MORAN delivered the opinion of the court:

On November 1, 1979, the circuit court of Adams County held that plaintiff, Moorman Manufacturing Company (Moorman), could not recover from defendant National Tank Company under the theories of (1) strict liability in tort, (2) misrepresentation and (3) negligence for purely economic losses resulting from an alleged crack in a grain-storage tank. The circuit court dismissed counts I, II and III of plaintiff's complaint (based upon the above tort theories) but found that count IV, based upon breach of express warranty, was not barred by the statute of limitations (section 2—725 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1977, ch. 26, par. 2—725)). On

appeal pursuant to Supreme Court Rules 304(a) and 308(a) (73 Ill. 2d Rules 304(a), 308(a)), the appellate court held that plaintiff could recover for economic loss under the tort theories of strict liability, misrepresentation and negligence. The court also found that plaintiff's tort actions were not barred by the statute of limitations (section 15 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16)) and that the storage tank was a product. It reversed the trial court's dismissal of counts I, II and III, but did not rule on the sufficiency of plaintiff's express-warranty allegations under count IV. 92 Ill. App. 3d 136.

The issues raised on appeal before us are whether plaintiff can recover for the cost of repairs and loss of use of the tank under the above-named tort theories, and, if so, whether the actions based upon those theories are barred by the applicable statute of limitations, whether the storage tank is a product (a requisite to application of strict liability in tort), and whether count IV, based upon express warranty, was barred by the statute of limitations.

On July 26, 1978, plaintiff filed a three-count complaint containing the following allegations. Defendant designed, manufactured and sold storage tanks. In 1966, plaintiff purchased a bolted-steel grain-storage tank from defendant for use at its feed-processing plant in Alpha, Illinois. In the last few months of 1976 or the first months of 1977, a crack developed in one of the steel plates on the second ring of the tank. Count I alleged that the tank was not reasonably safe due to certain design and manufacturing defects. Count II asserted that defendant had made certain representations, which were in fact untrue, in connection with the sale of the tank. Count III accused defendant of negligently designing the tank. On April 9, 1979, plaintiff filed an amendment to the complaint, adding count IV, claiming it had relied upon an express warranty made by the defendant at the time of the sale. In all four counts, plaintiff sought damages representing

the cost of repairs and reinforcement as well as loss of use of the tank. The trial court granted defendant's motion to dismiss the first three counts, concluding that the cost of repair and loss of profits or income were economic losses which could not be recovered under the tort theories named in the complaint. The trial court also held that count IV was not barred by the statute of limitations because an express warranty existed which extended to future performance of the tank.

The tort law of products liability stems from the contract cause of action for breach of warranty. In *MacPherson v. Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050, liability in negligence was imposed upon a manufacturer to an ultimate consumer without privity of contract. Subsequently, courts began to hold manufacturers liable for personal injuries without negligence; the theory generally utilized to reach the manufacturers was based upon the law of sales warranty. (See Prosser, *The Assault Upon The Citadel,* 69 Yale L.J. 1099, 1126 (1960) (Prosser I).) However, recognition of the difficulties facing consumers with respect to items such as notice and privity led most courts to abandon the privity requirement in implied-warranty actions (see Prosser, *The Fall Of The Citadel,* 50 Minn. L. Rev. 791 (1966) (Prosser II)) and to ultimately abandon the fiction of warranty in favor of strict liability in tort.

This State adopted the tort theory of strict liability in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, to allow a plaintiff to recover from a manufacturer for personal injuries. *Suvada*, however, did not address the question of whether a consumer could recover under a strict liability in tort theory for solely economic loss. That issue was first addressed in *Santor v. A & M Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305. There, the plaintiff purchased, from a third-party seller, carpeting that had been manufactured by the defendant. After

several months, unsightly lines began to appear on the surface of the carpeting. The Supreme Court of New Jersey held that the plaintiff could maintain a breach-of-warranty claim directly against the manufacturer despite the lack of privity between them. In *dicta,* the court went on to declare that although the strict liability in tort doctrine had been applied principally in connection with personal injuries, the responsibility of the manufacturer should be no different where damage to the article sold or to other property is involved. 44 N.J. 52, 66, 207 A.2d 305, 312.

Several months later, in *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17, the Supreme Court of California rejected the rationale by which the court in *Santor* imposed strict liability in tort for economic loss. In *Seely,* plaintiff purchased a truck manufactured by defendant. After he took possession, Seely discovered that the truck bounced violently. Nine months later, the truck overturned after brake failure, causing damage to the truck but no personal injury to Seely. Plaintiff had the damage repaired and subsequently stopped making his installment payments. Defendant repossessed the truck, at which time plaintiff sued on theories of breach of express warranty and strict tort liability, and sought damages for the repair of the truck, for money paid on the purchase price, and for profits lost by virtue of the truck's unsuitability for normal use. The court affirmed the trial court's award to Seely for money paid on the purchase price and for lost profits on the basis of express warranty. The court, however, went on to state that these economic losses are not recoverable under strict liability in tort. (63 Cal. 2d 9, 18, 403 P.2d 145, 151-52, 45 Cal. Rptr. 17, 23-24.) The court also declared, in reference to *Santor,* "Only if someone had been injured because the rug was unsafe for use would there have been any basis for imposing strict liability in tort." (63 Cal. 2d 9, 18, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23.) Thus,

the court refused to expand the scope of its opinion in *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 62, 377 P.2d 897, 900, 27 Cal. Rptr. 697, 700, which declared that a manufacturer is strictly liable in tort for a product that has a defect that causes injury to a person.

Subsequent to these two seminal cases in the area, some courts have held a manufacturer liable under the theory of strict liability in tort for solely economic losses. (See, *e.g., Mead Corp. v. Allendale Mutual Insurance Co.* (N.D. Ohio 1979), 465 F. Supp. 355 (Ohio law); *Berg v. General Motors Corp.* (1976), 87 Wash. 2d 584, 555 P.2d 818; *City of La Crosse v. Schubert, Schroeder & Associates, Inc.* (1976), 72 Wis. 2d 38, 240 N.W.2d 124; *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St. 2d 88, 326 N.E.2d 267; *Cova v. Harley Davidson Motor Co.* (1970), 26 Mich. App. 602, 182 N.W.2d 800.) Most courts, however, have denied recovery under strict liability in tort for solely economic losses. See, *e.g., Posttape Associates v. Eastman Kodak Co.* (3d Cir. 1976), 537 F.2d 751 (Pennsylvania law); *Fredonia Broadcasting Corp. v. RCA Corp.* (5th Cir. 1973), 481 F.2d 781 (Texas law); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.* (9th Cir. 1970), 422 F.2d 1013 (Pennsylvania law), *cert. denied* (1970), 400 U.S. 902, 27 L. Ed. 2d 138, 91 S. Ct. 138; *Midland Forge, Inc. v. Letts Industries, Inc.* (N.D. Iowa 1975), 395 F. Supp. 506 (Iowa law); *Arizona v. Cook Paint & Varnish Co.* (D. Ariz. 1975), 391 F. Supp. 962 (under law of Arizona, California, Hawaii, Texas, or Alaska economic loss is not recoverable in strict liability action), *aff'd* (9th Cir. 1976), 541 F.2d 226; *Cooley v. Salopian Industries, Ltd.* (D.S.C. 1974), 383 F. Supp. 1114 (South Carolina law); *Noel Transfer & Package Delivery Services, Inc. v. General Motors Corp.* (D. Minn. 1972), 341 F. Supp. 968; *Superwood Corp. v. Siempelkamp Corp.* (Minn. 1981), 311 N.W.2d 159; *Nobility Homes of Texas, Inc. v. Shivers* (Tex. 1977), 557 S.W.2d

77; *Morrow v. New Moon Homes, Inc.* (Alaska 1976), 548 P.2d 279; *Hiigel v. General Motors Corp.* (1975), 190 Colo. 57, 544 P.2d 983; *Hawkins Construction Co. v. Matthews Co.* (1973), 190 Neb. 546, 209 N.W.2d 643; *Price v. Gatlin* (1965), 241 Or. 315, 405 P.2d 502; *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194; *Beauchamp v. Wilson* (1973), 21 Ariz. App. 14, 515 P.2d 41; *Anthony v. Kelsey-Hayes Co.* (1972), 25 Cal. App. 3d 442, 102 Cal. Rptr. 113; *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362.

Like the California Supreme Court in *Greenman* and *Seely,* this court, in adopting the strict liability in tort theory in *Suvada,* emphasized the unreasonably dangerous nature of the product. (32 Ill. 2d 612, 619.) The focus upon the unreasonably dangerous condition of the product in cases involving strict liability has been consistently followed by this court. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 161; *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 210-11; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 342.) As noted by the dissenting opinion of the appellate court in this case, the unreasonably dangerous nature of a product has particular relevance when a personal injury results and to some degree when property damage occurs. It has little relevance to economic loss when neither personal injury nor property damage is involved.

In *Suvada,* this court adopted the definition of strict liability set forth in section 402A of the Restatement (Second) of Torts (1965). That section provides:

> "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property ***." (Emphasis added.)

The appellate court recognized this court's reliance upon that provision in subsequent cases, but determined that the policy behind section 402A should be fulfilled without

the court being bound by the section's precise language. Subsequent decisions of this court involving strict liability in tort have applied section 402A as well as comments to section 402A regarding the unreasonably dangerous nature a defect must possess. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211-12; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 343.) Contrary to the conclusion reached by the appellate court, we believe the language limiting section 402A to unreasonably dangerous defects resulting in physical harm to the ultimate user or consumer, or to his property, reflects sound policy reasons.

First, the law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The framework provided by the UCC includes the parol evidence rule (Ill. Rev. Stat. 1977, ch. 26, par. 2—202), express warranties (Ill. Rev. Stat. 1977, ch. 26, par. 2—313), implied warranties (Ill. Rev. Stat. 1977, ch. 26, par. 2—314), rules on disclaimers (Ill. Rev. Stat. 1977, ch. 26, par. 2—316), notice requirements (Ill. Rev. Stat. 1977, ch. 26, par. 2—607), limitations on the extent of a manufacturer's liability (Ill. Rev. Stat. 1977, ch. 26, pars. 2—718, 2—719) and a statute of limitations (Ill. Rev. Stat. 1977, ch. 26, par. 2—725). (See, *e.g., Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 289; *Superwood Corp. v. Siempelkamp Corp.* (Minn. 1981), 311 N.W.2d 159.) Although warranty rules frustrate just compensation for physical injury, they function well in a commercial setting. (See Ill. Rev. Stat. 1977, ch. 26, par. 2—719; Prosser I, 69 Yale L.J. 1099, 1130, 1133 (1960).) These rules determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver. *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 16, 403 P.2d 145, 150, 45 Cal. Rptr. 17, 22.

We note, for example, section 2—316 of the UCC,

which permits parties to a sales contract to limit warranties in any reasonable manner, or to agree that the buyer possesses no warranty protection at 'all. The parties may even agree to exclude the implied warranties of merchantability and fitness if they do so in writing, and may modify the implied warranty by clear and conspicuous language. (Ill. Rev. Stat. 1977, ch. 26, par. 2—316(2).) Yet, a manufacturer's strict liability for economic loss cannot be disclaimed because a manufacturer should not be permitted to define the scope of its own responsibility for defective products (*Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 16, 403 P.2d 145, 150, 45 Cal. Rptr. 17, 22; *Greenman v. Yuba Power Products, Inc.* (1962), 59 Cal. 2d 57, 63, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621; Restatement (Second) of Torts, section 402A, comment *m*, at 355-56 (1965).) Thus, adopting strict liability in tort for economic loss would effectively eviscerate section 2—316 of the UCC.

Further, application of the rules of warranty prevents a manufacturer from being held liable for damages of unknown and unlimited scope. If a defendant were held strictly liable in tort for the commercial loss suffered by a particular purchaser, it would be liable for business losses of other purchasers caused by the failure of the product to meet the specific needs of their business, even though these needs were communicated only to the dealer. (See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 16, 403 P.2d 145, 150, 45 Cal. Rptr. 17, 22.) Finally, a large purchaser, such as plaintiff in the instant case, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Or, it may choose to accept a lower purchase price for the product in lieu of warranty protection. Subsequent purchasers may do likewise in bargaining over the price of the product. We believe it is preferable to relegate the consumer to the comprehensive

scheme of remedies fashioned by the UCC, rather than requiring the consuming public to pay more for their products so that a manufacturer can insure against the possibility that some of his products will not meet the business needs of some of his customers. See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 17, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23; *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 288-91.

A common argument advanced by those favoring imposition of strict liability in tort for solely economic loss is the arbitrariness in allowing one who has suffered a personal injury to recover for all types of harm, yet preventing one from recovering for economic loss because he fortuitously escaped personal injury. (See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 21, 24-25, 403 P.2d 145, 153, 155, 45 Cal. Rptr. 17, 25, 27 (Peters, J., concurring in part and dissenting in part).) Although the argument has some appeal, we find Justice Traynor's response to that contention in his majority opinion in *Seely* more persuasive. Justice Traynor stated:

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the con-

sumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." 63 Cal. 2d 9, 18, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23.

Our examination of the considerable number of arguments advanced on both sides of the issue leads us to reject imposition of a strict liability in tort theory for recovery of solely economic loss.

We do hold, however, that when a product is sold in a defective condition that is unreasonably dangerous to the user or consumer or to his property, strict liability in tort is applicable to physical injury to plaintiff's property, as well as to personal injury. When an unreasonably dangerous defect is present, such as the truck's nonfunctioning brakes in *Seely,* and physical injury does, in fact, result, then "[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them." (*Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 19, 403 P.2d 145, 152, 45 Cal. Rptr. 17, 24. See Prosser I, 69 Yale L.J. 1099, 1143 (1960); Restatement (Second) of Torts sec. 402A (1965).) This comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, *i.e.,* when a product is unfit for its intended use.

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1169. See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 19, 403 P.2d 145, 152, 45 Cal. Rptr. 17, 24.

Plaintiff argues that economic loss is not sought in this case. It asserts in its brief that a product defect existed that posed an "extreme threat to life and limb, and to property of plaintiff and others, a defect which resulted in a sudden and violent ripping of plaintiff's tank, and which only fortunately did not extend the full height of the tank." Plaintiff further asserts that, because costs of repairs are not economic losses, consequential damages resulting from the loss of use of the tank during repairs does not constitute economic loss either.

"Economic loss" has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***" (Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L. Rev. 917, 918 (1966) (*Economic Loss*)) as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." (Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966).) These definitions are consistent with the policy of warranty law to protect expectations of suitability and quality.

The demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1169.) As one commentator observed in applying the definition of economic loss with respect to damage to the product:

"When the defect causes an accident 'involving some violence or collision with external objects,' the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. It is also important to distinguish between 'direct' and 'consequential' economic loss. *** Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product." (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966).)

Accord, *e.g., Pennsylvania Glass*, 652 F.2d 1165, 1169; *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 288; *Cloud v. Kit Manufacturing Co.* (Alaska 1977), 563 P.2d 248, 251.

For example, in *Jones & Laughlin Steel,* a manufacturer promised that roofing material would withstand high wind velocities, temperature extremities and heavy precipitation. The roofing material proved to be unsuited to adverse weather conditions, and plaintiff's plant sustained severe weather damages when portions of the roof buckled and blew away over the course of time. The Third Circuit Court of Appeals, applying Illinois law (and attempting to predict how the Illinois Supreme Court would rule in such a case) disallowed plaintiff's claims for the repair and replacement costs of the roof under both strict liability and negligence theories. (626 F.2d 280, 289-90.) The court found that the product's unsatisfactory performance was the type of problem warranties were designed to address. 626 F.2d 280, 288-89.

In *Cloud v. Kit Manufacturing Co.,* severe damage was caused to a trailer from a fire caused by the ignition of polyurethane padding that came with the trailer. The court found that deterioration and other defects of poor quality should be considered economic loss, whereas "sudden and calamitous damage" like that in the case before it consti-

tuted physical property damage recoverable in tort. 563 P.2d 248, 251. See *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.* (Alaska 1981), 623 P.2d 324; *Russell v. Ford Motor Co.* (1978), 281 Or. 587, 575 P.2d 1383.

Similarly, in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* damage to a front-end loader occurred as the result of a fire, a sudden and highly dangerous occurrence, caused by an alleged defect that posed a serious risk of harm to people and property. The Third Circuit, applying Pennsylvania law, found that the complaint fell within the policy of tort law. (652 F.2d 1165, 1174-75.) The court declared:

"Several principles and trends may be distilled from this analysis of policy and the decisions of other courts. Although strict liability in tort developed out of the law of warranties, the courts of most states have recognized that the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function. [Citation.] These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.

On the other hand, almost all courts have adopted the view that the benefit-of-the-bargain approach of warranty law is ill-suited to correct problems of hazardous products that cause physical injury. Manufacturers are better able to bear the risk or to take action to correct flaws that pose a danger. Accordingly, tort law imposes a duty on manufacturers to produce safe items,

regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself.

In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim." 652 F.2d 1165, 1172-73.

We agree with the rationale expressed in *Pennsylvania Glass Sand Corp.* and hold that, where only the defective product is damaged, economic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations cannot be recovered under a strict liability theory. Here, count I of the complaint alleged that during the last few months of 1976 and the first few months of 1977, "a crack developed in one of the steel plates on the second ring of [the] tank; such crack was not discovered by plaintiff *** until such tank was being emptied on or about August 24, 1977." This was not the type of sudden and dangerous occurrence best served by the policy of tort law that the manufacturer should bear the risk of hazardous products. Rather, like the factual situation in *Jones & Laughlin Steel,* and unlike that in *Cloud* and *Pennsylvania Glass,* the harm resulted from a qualitative defect relating to the purchaser's expectation in terms of the product's fitness to perform its intended

function. Plaintiff suffered a commercial loss of the type that the law of warranty is designed to protect. Consequently, repair and reinforcement of the tank and loss of the tank's use constitute economic losses for which plaintiff cannot recover under a theory of strict liability in tort.

Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract. As Dean Prosser has stated:

> "There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes ***. But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule *** that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." Prosser, Torts sec. 101, at 665 (4th ed. 1971).

Similarly, in *Seely*, Justice Traynor stated:

> "[A consumer] can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." 63 Cal. 2d 9, 18, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23.

We note that there are some cases in which the courts have allowed recovery in negligence for economic loss.

(*Berg v. General Motors Corp.* (1976), 87 Wash. 2d 584, 555 P.2d 818; *Omni Flying Club, Inc. v. Cessna Aircraft Co.* (1974), 366 Mass. 154, 315 N.E.2d 885; *State ex rel. Western Seed Production Corp. v. Campbell* (1968), 250 Or. 262, 442 P.2d 215, *cert. denied* (1969), 393 U.S. 1093, 21 L. Ed. 2d 784, 89 S. Ct. 862; *Spence v. Three Rivers Builders & Masonry Supply, Inc.* (1958), 353 Mich. 120, 90 N.W.2d 873.) Yet, the vast majority of commentators and cases support the view against allowing recovery in negligence for economic losses. *E.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165; *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280; *Karl's Shoe Stores, Ltd. v. United Shoe Machinery Corp.* (D. Mass. 1956), 145 F. Supp. 376; *Donovan Construction Co. v. General Electric Co.* (D. Minn. 1955), 133 F. Supp. 870; *Superwood Corp. v. Siempelkamp Corp.* (Minn. 1981), 311 N.W.2d 159; *Clark v. International Harvester Co.* (1978), 99 Idaho 326, 581 P.2d 784; *Inglis v. American Motors Corp.* (1965), 3 Ohio St. 2d 132, 209 N.E.2d 583; *Trans World Airlines, Inc. v. Curtiss-Wright Corp.* (Sup. Ct. 1955), 1 Misc. 2d 477, 148 N.Y.S.2d 284; *Fireman's Fund American Insurance Companies v. Burns Electronic Security Services, Inc.* (1981), 93 Ill. App. 3d 298; *Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338; *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194; *Chrysler Corp. v. Taylor* (1977), 141 Ga. App. 671, 234 S.E.2d 123; *Long v. Jim Letts Oldsmobile, Inc.* (1975), 135 Ga. App. 293, 217 S.E.2d 602; *Anthony v. Kelsey-Hayes Co.* (1972), 25 Cal. App. 3d 442, 102 Cal. Rptr. 113; *Crowell Corp. v. Topkis Construction Co.* (Del. Super. Ct. 1971), 280 A.2d 730; *Wyatt v. Cadillac Motor Car Division* (1956), 145 Cal. App. 2d 423, 302 P.2d 665. See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17. *Amodeo v. Autocraft Hudson, Inc.* (Sup. Ct. 1959), 195

N.Y.S.2d 711, *aff'd* (1960), 12 App. Div. 2d 499, 207 N.Y.S.2d 101.

The policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well. When the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery. (*E.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1169, 1172-73.) Moreover, as was true with strict liability, if a manufacturer were held liable in negligence for the commercial loss suffered by a particular purchaser, it would be liable for business losses of other purchasers caused by the failure of its product to meet the specific needs of their businesses, even though the needs were communicated only to the dealer. (See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 17, 403 P.2d 145, 150, 45 Cal. Rptr. 17, 22.) Thus, a manufacturer could be held liable for damages of unknown and unlimited scope, even though the product is not unreasonably dangerous and even though there is no damage to person or property. See *Ultramares Corp. v. Touche* (1931), 255 N.Y. 170, 179-80, 174 N.E. 441, 444; Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L. Rev. 917, 944 (1966).

As discussed above, the UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic loss would constitute an unwarranted infringement upon the scheme provided by the UCC. We have already concluded that plaintiff, in this case, has suffered solely economic loss. Consequently, it cannot recover damages under a negligence theory.

This court has held that economic loss is recoverable where one intentionally makes false representations

(*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282), and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations (*Rozny v. Marnul* (1969), 43 Ill. 2d 54). Neither of these cases, however, implied that economic loss was recoverable for innocent misrepresentation. Holding a manufacturer liable for economic loss for misrepresentations that were neither intentionally nor negligently made would, in effect, be an imposition of strict liability. The manufacturer would be accountable for all economic losses suffered by purchasers pursuant to such a misrepresentation. We have already discussed extensively the policy reasons militating against allowing recovery in strict liability for solely economic loss.

Just as section 402A of the Restatement (Second) of Torts (1965) imposes strict liability for defective products when physical harm occurs, section 402B imposes strict liability for misrepresentation when the misrepresented product causes physical harm. (See Restatement (Second) of Torts sec. 552C, comment *b* (1977) (relating to innocent misrepresentation) which provides: "Under this Section, damages are solely restitutionary in character." Comment *f* to section 552C provides: "Since the defendant's misrepresentation is an innocent one, he is not held liable for other damages; specifically, he is not liable for benefit of the bargain or for consequential damages.") As stated in *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 288:

> "Nowhere in the accompanying commentary or illustrations [to sections 402A and 402B] do the reporters of the Restatement indicate that the doctrine of strict liability covers economic losses. Indeed, comment d to sec. 402B strongly implies that the rule was not intended to overlap the provisions of the Uniform Commercial Code or the

common law of sales, which traditionally provided the sole basis for recovery of economic losses: 'The liability stated in this section is liability in tort, and not in contract; and if it is to be called one of "warranty," it is at least a different kind of warranty from that involved in the ordinary sale of goods from the immediate seller to the immediate buyer.' "

See Hill, *Damages for Innocent Misrepresentation*, 73 Colum. L. Rev. 679 (1973).

Additionally, subjecting defendant to liability for plaintiff's economic loss by virtue of an innocent misrepresentation would, in effect, contravene the remedial scheme contemplated by the UCC. Section 2—313 provides for express warranties by affirmation, promise, description or sample. (Ill. Rev. Stat. 1977, ch. 26, par. 2—313.) As already stated, section 2—316 allows parties to limit or eliminate warranty protection. (Ill. Rev. Stat. 1977, ch. 26, par. 2—316.) Section 2—719 allows parties to exclude or restrict remedies for consequential damages resulting from commercial losses (but not from personal injury). (Ill. Rev. Stat. 1977, ch. 26, par. 2—719.) Inasmuch as the doctrine of strict liability does not permit a manufacturer to limit his liability for misrepresentation through the use of waiver or limited warranty (Restatement (Second) of Torts sec. 402B, comment *d*, at 360 (1965)), imposition of tort liability for innocent misrepresentation resulting in solely economic loss would effectively supersede these sections of the UCC (*Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 289). Moreover, sections 2—202 (parol evidence rule) and 2—607(3) (notice requirements) of the UCC would lose significance (Ill. Rev. Stat. 1977, ch. 26, pars. 2—202, 2—607).

Due to the already discussed nature of economic losses, a purchaser's remedy for those losses by virtue of a

seller's innocent misrepresentation appropriately lies under the warranty provisions of the UCC. Thus, in this case, plaintiff cannot recover in tort its purely economic losses for any innocent misrepresentations made by defendant.

In summary, extension of the tort theories of strict liability, negligence or innocent misrepresentation to cover solely economic losses would, in effect, make a manufacturer the guarantor that all of its products would continue to perform satisfactorily throughout their reasonably productive life. Subjecting a manufacturer to liability under those tort theories for a purchaser's solely economic losses would encroach upon the decision by our legislature to enact the sales provisions, sections 2–101 to 2–725, of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, pars. 2–101 to 2–725). As the Supreme Court of Idaho observed in addressing this question:

"[T]he legislatures of nearly every state in the Union, have adopted the UCC which carefully and painstakingly sets forth the rights between parties in a sales transaction with regard to economic loss. This Court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in the UCC." (Footnote omitted.) *Clark v. International Harvester Co.* (1978), 99 Idaho 326, 335, 581 P.2d 784, 793.

We likewise will not interfere with the legislatively enacted framework of the UCC, provided by the draftsmen after painstaking and thorough consideration. For this reason, as well as the numerous policy reasons stated, we follow the decisions of the majority of courts and commentators and hold that plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation. Inasmuch as

the alleged damages suffered by plaintiff in this case fall under the purview of economic loss, his remedy for the alleged defect must lie in the warranty provisions of the UCC.

Because of the decision reached, it is unnecessary to address whether counts I, II and III are barred by the statute of limitations, or whether the storage tank is a "product" placing it under the ambit of strict liability in tort.

The final issue is whether count IV, based upon breach of express warranty, was barred by the statute of limitations. The appellate court held that the warranty set forth in paragraph 8 of count IV of plaintiff's complaint, namely,

> "Tank designed to withstand 60 lbs. per bushel grain and 100 m.p.h. winds,"

did not extend to future performance. Notwithstanding this holding, the court did not conclude that count IV was barred by section 2–725 of the UCC (Ill. Rev. Stat. 1977, ch. 26, par. 2–725) because it was only asked to rule on that one specific aspect of count IV in determining whether there was a warranty for future performance. The appellate court left open the question of whether count IV, in its entirety, would have sufficiently indicated a warranty for future performance. One justice dissented, concluding that count IV relied entirely on the warranty set forth in paragraph 8, which he agreed did not extend to future performance.

After reviewing the complaint, we note that the warranty is stated in its entirety in paragraph 8 of count IV and is not expanded upon elsewhere in that count. Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 36) provides that a claim founded upon a written instrument must include a copy thereof, or a recitation of the provisions relied upon. Inasmuch as the above-stated warranty is the only provision of the contract explicitly

set forth in count IV, the sufficiency of the count rests entirely upon that warranty.

In any event, on appeal before us, plaintiff's only argument concerning count IV is that the warranty contained in paragraph 8 does extend to future performance. Section 2–725 of the UCC (Ill. Rev. Stat. 1977, ch. 26, par. 2–725) provides:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. ***
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly extends to future performance* of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (Emphasis added.)

Several appellate court decisions in this State have held that merely because it is reasonable to expect that a warranty of merchantability extends for the life of a product does not mean that such a warranty "explicitly extends to future performance." *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 709; *Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 413; *Wilson v. Massey-Ferguson, Inc.* (1974), 21 Ill. App. 3d 867, 871-72. Accord, *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, 291; J. White & R. Summers, Uniform Commercial Code sec. 11–8, at 341-42 (1972).

In *Binkley Co. v. Teledyne Mid-America Corp.* (E.D. Mo. 1971), 333 F. Supp. 1183, *aff'd* (8th Cir. 1972), 460 F.2d 276, the seller of a welding machine expressly warranted that a welder would weld at a rate of 1,000 feet per 50-minute hour, which it never did. The court defined "explicit" under 2–725(2) as " ' "[n] ot implied merely, or conveyed by implication; distinctly stated;

plain in language; clear; not ambiguous; express; unequivocal." ' " (333 F. Supp. 1183, 1186.) Although the warranty expressly stated that the welder would weld at 1,000 feet per hour, the court found that the statute had lapsed because there was no reference to future time in the warranty and, thus, no explicit warranty of future performance. In response to the buyer's argument that he was unable to test the product until after delivery, the court pointed to the clear language of section 2–725(2) which provides that the breach occurs at the time of delivery "regardless of the aggrieved party's lack of knowledge."

We agree with the decision in that case as well as the appellate decisions in this State adhering to the clear language of the statute. (See *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 709; *Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 413; *Wilson v. Massey-Ferguson, Inc.* (1974), 21 Ill. App. 3d 867, 871-72.) The mere expectation that a product's warranty extends for the life of the product does not delay the point at which the statute of limitations commences to run. The cause of action accrues when tender of delivery is made, except upon a warranty *explicitly* extending to future performance. Here, defendant's warranty did not explicitly extend to future performance. Hence, we conclude the exception in section 2–725(2) of the UCC (Ill. Rev. Stat. 1977, ch. 26, par. 2–725(2)) to the four-year statute of limitations is not applicable. Plaintiff's amendment to the complaint containing the breach-of-express-warranty count, which was filed in 1979, was barred by the four-year limitations period.

For the reasons stated, we reverse the appellate court's judgment on counts I, II and III of plaintiff's complaint and affirm the trial court's dismissal of those counts. As to count IV, the appellate court's reponse to the question of law presented to it on appeal pursuant to Supreme

Court Rule 308(a) (73 Ill. 2d R. 308(a)) is affirmed. Because we have held that question dispositive of count IV, the trial court's denial of defendant's motion to dismiss that count is reversed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*

JUSTICE SIMON, specially concurring:

I concur in the judgment, and in the general principle that economic loss should not give rise to product liability in tort. I disagree with certain statements and assumptions in the majority opinion.

There is no fundamental reason to define economic loss primarily as the absence or opposite of physical harm. The appellate court opinion in this case demonstrates at length the illogical results of the no-physical-harm approach, especially if combined with the view that once there is any physical harm, all damages are recoverable, including those that would be considered economic loss when not accompanied by the physical harm. Physical harm should not guarantee recovery, and the absence of physical harm should not necessarily defeat recovery. For example, if an oven malfunctions and has to be repaired or replaced, that is clearly economic loss; if the roast inside is burned to a crisp (physical harm), should that make all the losses recoverable? Conversely, I believe there should be recovery for lost profits where a plaintiff restaurant buys and serves the defendant's unfit packaged food, so that a patron, though uninjured, jumps up and denounces the restaurant, wrecking its reputation (*Mazetti v. Armour & Co.* (1913), 75 Wash. 622, 135 P. 633), or where flooring material emits a penetrating obnoxious odor, rendering a store's merchandise unsaleable, though not physically damaged (*Walker v. Decora, Inc.* (1971), 225 Tenn. 504,

471 S.W.2d 778), or simply driving customers out of the store.

The essential difference between economic loss and noneconomic loss is the difference between contract and tort. The proper approach is to draw the line according to the policies that make some damages recoverable in tort and others not. The majority opinion goes a long way toward acknowledging this. In particular, it quotes and adopts *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, which held that, at least in the case of damage to the defective product itself, as opposed to other objects, the items for which damages are sought do not necessarily determine whether the loss is economic, but one must look to the policies behind the regimes of torts and contracts to see which is more appropriate. This logic should be carried further and applied more generally.

The true significance of physical harm is that it usually represents an invasion of a right existing apart from any contract—a tort interest. No one is supposed to set your house on fire, and neither should a product. But there are other such interests. A product should not wreck your employees' morale or your customers' good will, either; if it goes berserk and does so, that is likely to fall on the tort side of the line. On the other hand, if a product simply fails to live up to its promise, if it does not accomplish what it was supposed to the way it was supposed to, that is only an invasion of a contract-like interest: the user has lost the benefit of his bargain. If a refrigerator fails, the food inside may spoil, but there is no tort. The product may be inadequate or useless, but it is not dangerous. The only risk is to commercial expectations.

The central test is the relation of the malfunction and the consequent loss to what the product was supposed to accomplish. The product's function is the core of the commercial bargain, and any shortcomings should normally be

dealt with by commercial law, unless there is some excellent reason for invoking the less flexible tort system. Hazards peripheral to the product's function, however, were not in the forefront of the minds of the contracting parties, and it is convenient to have tort rules about them. *Fireman's Fund American Insurance Cos. v. Burns Electronic Security Services, Inc.* (1980), 93 Ill. App. 3d 298, *appeal denied* (1982), 88 Ill. 2d 550.

Other considerations, including the physical character of the damage, may be significant in certain cases. For example, personal injury occupies a special place in the law; risks to the person are less subject to allocation by agreement than other risks (*cf.* Ill. Rev. Stat. 1979, ch. 26, par. 2–719(3) (limitation of damages for personal injury is *prima facie* unconscionable)), so that a defect that endangers personal safety presents an unusually strong attraction to the tort system.

While I do not propose any litmus test for economic loss, I believe that the first step is to break away from a fixation on physical harm. Physical harm has maintained its place only because it is a proxy for the real distinction. That is, defects that cause physical harm to property other than the product itself usually involve an accident rather than a mere failure, because few products are dedicated to the purpose of not damaging things. The purpose of a toaster is to toast, not to avoid burning the house down. Conversely, where there is no physical harm at all, the loss is usually economic, because it is rare for a product to cause large nonphysical losses except by failing to do something someone was expecting; most accidental losses are physical. The difficulty and disagreements the law has had over the intermediate case of damage to the product itself reflect the fact that whether recovery is permitted is unpredictable; there is no quick answer to the question of whether the loss is economic, and the law has therefore been forced to take a more comprehensive and more

sensible approach than merely looking for physical distinctions. The fact that physical harm is a proxy for something else rather than of fundamental legal significance is clearly seen in the widespread idea that if the incident involves *any* physical harm, *all* losses are recoverable—an idea that the appellate court discussed and attacked at some length. Such a rule would indeed be out of place if the law were really concerned about what kinds of items of damages are recoverable. It makes sense once we realize that the real issue is whether the incident as a whole belongs in the tort world. The presence of any physical harm tends to indicate that more is involved than an inferior product; the defect and the hazard were probably such that tort treatment is appropriate. Once we decide to treat the incident as a tort, the losses are recoverable without regard to whether they are physical.

In summary, this case presents no more than an inferior product. The majority correctly explains that the loss is economic loss not suitable for recovery in tort. In *dictum*, however, the majority perpetuates the conventional wisdom about other, supposedly easier, kinds of cases.

I raise another question about the majority opinion and about most discussions of economic loss. They assume that there can be only one kind of strict product liability out of privity. This assumption forces one to choose between saying that economic loss is not recoverable out of privity and saying that there is no difference between economic loss and any other kind. Neither alternative is satisfactory. One should not have to choose wholesale between *Santor v. A&M Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305, and *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17; I believe the proper approach is to adopt the valid concerns behind each. There is, as those who opt for *Seely* insist, a big difference between economic loss and its opposite: the difference between contract and tort. Economic loss should not be

recoverable *in tort.* But that does not mean that it should not be recoverable unless there is privity. In the world of modern commerce, where people rely on nationally advertised brand names to buy goods that the retailer never altered, inspected, or recommended, it is realistic to say, with *Santor,* that there is a bargain of sorts between buyer and manufacturer, and that the buyer is entitled to the benefit of that bargain. In other words, economic loss should be recoverable out of privity in some circumstances, but not on the same terms as tort losses.

The proper approach is to develop a system of warranties out of privity to protect warranty-like, that is contract-like, interests, while using a tort theory to protect tort interests. Both theories have solid support in the precedents. In fact, half of the classic cases that Prosser cited as support for his tort approach allowed recovery for economic losses; they were based on implied warranties. (Edmeades, *The Citadel Stands: The Recovery of Economic Loss in American Products Liability,* 27 Case W. Res. L. Rev. 647 (1977).) Prosser convinced us that the warranty approach was not needed or suited for tort cases. But a tort approach to enforcing routine commercial expectations is as fictitious as a warranty theory usually is for personal injuries. We need both, and this case should not be construed to foreclose that possibility.