**STARKS FEED COMPANY and Starks Veal Company, Plaintiffs,**

v.

**CONSOLIDATED BADGER COOPERATIVE, INC., Defendant.**

**No. 82 C 3716.**

United States District Court, N.D. Illinois, E.D.

Sept. 7, 1984.

Harry P. Stinespring, Harry P. Stinespring & Associates, John S. Fosse, John S. Fosse & Associates, Ltd., Chicago, Ill., for plaintiffs.

Wayne F. Plaza, Michael C. Borders, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for defendant.

### Memorandum

LEIGHTON, District Judge.

This cause is before the court on the motion of defendant Consolidated Badger Cooperative, Inc. ("Consolidated"), pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Counts I, II and IV of the complaint of plaintiff Starks Veal Company ("Veal"). These counts allege tort claims in strict liability, negligence, and willful and wanton misconduct. Also before the court is the motion of plaintiffs Veal and Starks Feed Company ("Feed") to reconsider the court's order of December 3, 1982, which granted Consolidated's motion to dismiss Counts I, II and IV of Feed's complaint. Those counts also alleged claims in strict liability, negligence, and willful and wanton misconduct. For the reasons that follow, the motions are denied.

The litigation arises out of allegedly defective dried buttermilk powder purchased by Feed from Consolidated. Feed had regularly purchased large quantities of the dehydrated dairy product from Consolidated for incorporation in its veal calf feeds which was then sold and supplied to numerous veal calf growers. Feed claims that during December, 1981, and January, 1982, Consolidated sold it allegedly adulterated powder which it mixed with its own product, thereby contaminating the veal calf feed. This allegedly contaminated compound was then sold to calf growers, including Veal, who later complained to Feed that some of the calves that ingested the mix became ill or died.

Feed and Veal brought suit against Consolidated on warranty and tort theories. In its order of December 3, 1982, dismissing Feed's tort claims, this court found that allegations of damage to reputation and credit rating, and dimunition in the value of the feed, constituted "economic loss." Accordingly, the court held that Feed's remedy was not in tort, but in contract, under the provisions of the Uniform Commercial Code.

"Economic loss" can be defined as "the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits." *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 84, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450 (1982). *See also Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill. Dec. 411, 441 N.E.2d 324 (1982). Such damages fall under the ambit of a purchaser's disappointed expectations and cannot be recovered in tort. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d at 85, 61 Ill.Dec. at 753, 435 N.E.2d at 450.

Feed now asks the court to reconsider its order in light of case law subsequent to

*Moorman.* Later decisions look less to the presence of damage to the product, and more to the facts of the case and causative factors involved in the claim to determine if economic loss or tortious conduct is involved. Such analysis is particularly pertinent where the defective product is damaged by a sudden and dangerous occurrence. *See e.g., Vaughn v. General Motors Corp.,* 118 Ill.App.3d 201, 73 Ill.Dec. 643, 454 N.E.2d 740 (3d Dist.1983); *Foxcroft Townhome Owners Assoc. v. Hof. Rosner Corp.,* 96 Ill.2d 150, 70 Ill.Dec. 251, 449 N.E.2d 125 (1983).

■ While Feed bases its claim for reconsideration on such cases, the court does not find them relevant. The commingling of the allegedly defective mix into Feed's own product does not suggest tortious activity resulting from a sudden and dangerous occurrence. Rather, Feed's harm stemmed from a qualitative defect in Consolidated's product "relating to its expectation in terms of the product's fitness to perform its intended function." *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d at 85–86, 61 Ill.Dec. at 753, 435 N.E.2d at 450. Accordingly, although the court has reconsidered the matter, it will not change its earlier decision that Feed's remedy is in contract, not in tort.

■ Following the court's dismissal of Feed's tort claims, Consolidated brought a separate motion to dismiss Veal's tort claims. Consolidated argues that Veal's complaint does not state a claim in tort because it alleges lost profits, lost utilization of barn facilities, incurred veterinarian costs, lost profits from dead and low-grade calves, and lost sales and business from contract growers, which suggest a loss of commercial expectation such as that suffered by Feed.

This court, however, does not agree. It is axiomatic that under Fed.R.Civ.P. 12(b)(6), a complaint should be dismissed for failure to state a claim only if it appears beyond doubt that a plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Taking the allegations as true, and reading them in the light most favorable to plaintiff which we are required to do, the court concludes that Veal has satisfied the requisite specificity of pleading necessary to survive this motion to dismiss because it has alleged property damage to its calves, thus stating a colorable tort claim.

Veal's complaint relates that it and other buyers complained to Feed that their calves, after being fed the allegedly defective product, became sick and "were dying in unusual numbers." Post-mortem examinations of these animals revealed abraded, ulcerated and inflamed stomach and intestine linings. Veal's case is thus distinguishable from Feed's. Where Feed can claim only damage to the product itself, Veal can claim tangible property damage to other than the product, namely the calves. Therefore, its claim fits within traditional definitions of non-economic loss, and it is entitled to proceed in tort. Accordingly, Consolidated's motion to dismiss Counts I, II and IV of Veal's complaint for failure to state a claim is denied.

So ordered.