**EVANSTON BANK, Plaintiff–Appellee,**

**v.**

**BRINK'S, INC., Defendant–Appellant.**

**No. 87–2654.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1988.

Decided July 21, 1988.

---

Daniel C. Sullivan, Sullivan & Assoc., Ltd., Downers Grove, Ill., for defendant-appellant.

Carolyn Gallagher Brocksmith, Dardick & Denlow, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant Brink's Inc., appeals from the district court's decision granting judgment to plaintiff Evanston Bank on a suit for breach of contract regarding a misdelivery of $20,000.00 in cash. We affirm.

## A.

On July 21, 1983, the bank received a telephone call from one of its customers, Elema Schonander, requesting that $20,000.00 be withdrawn from his checking account and delivered to him at his downtown Chicago, Illinois office.[1] The bank agreed and called Brink's, an armored car company, to make arrangements for the delivery. Brink's arrived at the bank on the same day and picked up the $20,000.00 for next-day delivery to Schonander. Unfortunately for Brink's its employees went on strike at 12:00 a.m. July 22, 1983, making next day deliveries impossible.

On July 22, 1983, a bank official telephoned a Brink's manager and without explaining why, asked Brink's to return the $20,000.00 to the bank.[2] The manager veri-

1. Schonander had previously opened an account at the bank by depositing approximately $102,000.00 worth of checks made payable to him.

2. Unbeknownst to Brink's and the bank, the Elema Schonander who opened the account at the bank was really Thomas Thompson. Thompson used stolen checks to open the account. On the day the bank called Brink's to return the $20,000.00, the bank discovered Schonander was really Thompson and that he did not have sufficient funds in the account to cover the $20,000.00 withdrawal.

fied that Brink's still had the money and told the bank official that the money would be returned.

In the meantime, an individual identifying himself as Schonander called Brink's and asked about his $20,000.00 shipment. The Brink's employee who spoke with Schonander, unaware that the manager had promised to return the money to the bank, told Schonander no deliveries could be made but that Schonander could pick up the money himself with proper identification. Shortly thereafter, Schonander arrived and produced identification. Still unaware of the manager's promise to the bank, other Brink's employees turned the money over to Schonander.

It was not until a few days later that the bank learned that the money had been turned over to Schonander. The bank demanded reimbursement based on Brink's oral promise to return the money to the bank. Brink's refused and the bank filed a breach of contract and negligence action against Brink's.[3]

Following a bench trial, the district court ruled in the bank's favor, finding that Brink's was liable for its failure to return the money to the bank. This appeal followed.

### B.

On appeal, Brink's argues the district court's findings are fundamentally flawed because they are based on the wrong contract. That is, the delivery from the bank to Schonander was made under a contract between Brink's and Schonander and not the bank/Brink's contract.[4] Under the Schonander/Brink's contract, Brink's legitimately turned the money over to Schonander when he presented proper identification. Brink's also argues that the bank must bear the responsibility for its losses, because it turned the $20,000.00 over to Brink's for delivery without first ensuring that Schonander's checks had cleared.

The bank argues there is no evidence that when Schonander called the bank to arrange for a delivery, he requested it be done under his contract with Brink's. Moreover, there is no evidence that when the bank called Brink's to make delivery arrangements, Schonander's contract was ever mentioned or that the bank was acting as Schonander's agent. Thus, everyone, including Brink's, was operating under the assumption that the bank/Brink's contract was controlling. Under the bank/Brink's contract, only deliveries from one bank branch to another were permitted. However, the bank argues that its contract was orally modified when it requested Brink's to make a delivery to a third party and Brink's agreed. The contract was modified again when Brink's agreed to return the money to the bank. Brink's failure to live

---

3. The negligence claim was dismissed by the district court based on the Illinois Supreme Court's decision in *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). In *Moorman,* the court ruled that a negligence claim, based on purely economic losses, will not lie where the same facts support another form of statutory or common law claim for damages. Because we affirm the district court's judgment on the contract claim, we need not discuss the propriety of dismissing the negligence claim.

4. Contracts Nos. 292421 and 292426, between the bank and Brink's, were for delivery between a designated local bank and the Evanston bank at 905 Chicago Avenue in Evanston, Illinois, or a designated local bank and the Evanston bank at 603 Main Street, Evanston, Illinois, respectively. Both contracts also contained the following paragraphs:

¶ 9(a) This contract *may be* altered, amended, or superseded in writing or by an executed oral agreement by the parties hereto. (emphasis added).

¶ 3(a) First party [Brink's] *agrees to assume entire liability for any loss or any shipment* up to and including the maximum amount stated under the schedule of this contract. First party's liability shall commence when any shipment has been received into first party's possession and shall terminate *when the same has been delivered to the designated consignee or returned to the consignor in the event that delivery cannot reasonably be made.* (emphasis added).

The contracts (Nos. 322036 and 322038) between Schonander and Brink's called for deliveries between the 5th Floor, 323 Franklin Blvd. in Chicago, Illinois and a designated bank or 5th Floor, 625 North Michigan Avenue and a designated bank. Those contracts also contained paragraphs 9(a) and 3(a).

up to the second modification constituted a breach of contract.

Brink's points out that the Schonander/Brink's contract permitted a delivery to Schonander without modification. Thus, the bank/Brink's contract was not orally modified to permit delivery to a third party and then modified again for return to the bank.

At trial, the district court ruled that because of the complete lack of evidence to the contrary, the bank was not acting as Schonander's agent when it made delivery arrangements. The bank/Brink's contract was orally modified when Brink's agreed to make a delivery to Schonander. It was again modified when Brink's agreed to return the money to the bank. Since Brink's failed to meet the requirements of the second modification, it breached its contract and was liable to the bank.

### C.

We agree with the district court's assessment that the bank/Brink's contract was controlling in determining the rights and liabilities of the parties in this action. Although Schonander's contract was expressly drawn to cover deliveries to his place of business, there was no evidence in the record that the bank was acting on behalf of Schonander when it called Brink's to make arrangements for delivery of the $20,000.00. The only evidence presented at trial was that the bank made arrangements for the delivery, leading the district court to conclude that the bank was acting on its own behalf, under its contract with Brink's.

Brink's argues the district court's finding is erroneous in part, because the court did not permit the admission of crucial evidence that the bank had an expectation that Schonander would pay for the delivery and that the delivery was being made under his contract. Brink's points out that it had the deposition testimony of one bank official that the bank believed the delivery was being made under Schonander's contract.

In its opinion, the district court acknowledged that such evidence existed and that it was highly relevant to the issue of which contract was controlling. However, the court also noted that the evidence had never been properly introduced into evidence and therefore, could not be considered in reaching its decision.

Mr. Ott, a bank official, who, in a deposition taken earlier, had testified that the bank was acting under the Schonander/Brink's contract,[5] was questioned at trial about his statements in the following manner:

Q: And that on this particular shipment if Brink's had billed you on that shipment, you would have not paid that bill; isn't that correct?

Counsel for the bank objected to the question because it was speculative. That objection was sustained. Counsel for Brink's then attempted to introduce Ott's previous deposition testimony. Another objection was also sustained. Consequently, the evidence was never admitted.

 It is clear from the record that although there was evidence available to show that the bank believed it was operating under the Schonander/Brink's contract, that evidence was simply not properly introduced at trial. Counsel's first question to Ott was what the bank would have done under given circumstances. Since this question required Mr. Ott to speculate about what might have happened, the bank's objection to that question was properly sustained. Fed.R.Evid. 602. Then, rather than rephrasing the question or asking some other preliminary questions,

5. At his deposition, Mr. Ott, the head cashier at the bank, was asked:
 Q: If Brink's would have sent a bill, a charge to the Evanston Bank for the July 21, 1983 shipment that was destined to the Schonander Accounting Services or if Brink's would have sent a bill to the bank for any such delivery not falling within the call at or deliver to provisos, would you have paid that invoice?
 A: No.
 Q: Why not?
 A: Because it was our understanding that we were actually acting under an account that Schonander Accounting Services had with Brinks.

Brink's counsel sought to introduce Ott's deposition testimony in an attempt, we will assume, to impeach Ott. However, Ott had, up to this point, given no answer regarding payment of the Brink's bill which properly was subject to impeachment. Thus, the objection to the introduction of Ott's deposition testimony at this point was also properly sustained. *See generally* Fed.R.Evid. 801(d)(1)(A). Brink's counsel made no further attempt to introduce the evidence or to explain on what other basis the evidence could be admitted.[6]

■ In the absence of testimony by Ott that the bank was operating under the Schonander contract when it contacted Brink's for a delivery to Schonander, there was no evidence in the record about the Schonander contract. The state of the record was such that the district court found that the parties were acting under the bank/Brink's contract. The only evidence in the record, agreed to in the stipulation of facts, was that the bank made arrangements for the delivery to Schonander.

We will not disturb the district court's findings of fact unless those findings are clearly erroneous. Fed.R.Civ.P. 52(a). *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Nor will we disturb the court's legal conclusions which are based on its findings of fact unless those conclusions are "implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence...." If they are not, the trial court's findings will not be overturned as clearly erroneous. *Ratliff v. City of Milwaukee,* 795 F.2d 612, 617 (7th Cir.1986). *See also Hayden v. Oak Terrace Apts., et al.,* 808 F.2d 1269 (7th Cir.1987). In this case, as we have said, the state of the record is such that the court's finding that the bank/Brink's contract was controlling, was adequately supported by the record.

■ We must now determine whether the district court's resulting decision was correct. Under the terms of the bank/Brink's contract, Brink's only agreed to make deliveries from one branch bank to another, a point on which there is no disagreement. So when the bank asked Brink's to make a delivery to a third party under its contract and Brink's agreed, it was clear the parties orally modified their contract.

Under the terms of the now-modified contract, if delivery to the consignee became impossible, Brink's was required to return the money to the consignor, in this case, the bank. Brink's argues this "return clause" was standard in all its contracts. Thus, the court erred when it found that the already modified contract was again modified to permit the return of the money to the bank.

However, the "return clause" called for the return of the $20,000.00 only in the event delivery to the consignee could not reasonably be made. When the bank called Brink's for return of the money it was, in effect, asking Brink's to override the terms of the "return clause" and to return the money even if delivery to Schonander could reasonably be made. Again, Brink's agreed to return the money, no questions asked. That is, no discussion ensued about whether Brink's was to attempt delivery to Schonander before returning the money. Brink's simply agreed to return the money. The district court's finding that the bank's contract was modified a second time when Brink's agreed to return the money to the bank, is supported by the record and is not erroneous.

It is undisputed that the money was never returned to the bank and that Brink's turned the money over to Schonander despite its promise not to do so. The district court's finding that Brink's breached its

---

**6.** Perhaps there may have been other ways to introduce the evidence in question. *See* Fed.R. Evid. 801(d)(2). However, counsel made no attempt to do so or to explain to the court on what basis the evidence was being introduced. As we explained in *Young v. Rabideau,* 821 F.2d 373, 375 (7th Cir.1987), it is incumbent upon the party presenting the evidence to make an appropriate offer of proof describing both the relevance of the evidence and the basis upon which it is being offered in order to properly preserve an issue regarding such evidence for appeal.

contract with the bank is therefore also supported by the record.

We find that although this case presents a somewhat convoluted set of circumstances, the district court's findings are not clearly erroneous given the state of the evidence and must therefore be upheld on appeal. The district court's judgment in favor of the Evanston Bank is AFFIRMED.