[Cite as *Vassil v. Gross & Gross, L.L.C.*, 2013-Ohio-4190.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99392

---

# LAWRENCE W. VASSIL

### PLAINTIFF-APPELLANT
### CROSS-APPELLEE

vs.

# GROSS & GROSS, L.L.C., ET AL.

### DEFENDANTS-APPELLEES
### CROSS-APPELLANTS

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-688844

**BEFORE:** S. Gallagher, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 26, 2013

**ATTORNEYS FOR APPELLANT**

Mark I. Wallach
Marquettes D. Robinson
Thacker Martinsek, L.P.A.
2330 One Cleveland Center
1375 East 9th Street
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEES**

Timothy T. Brick
Julie L. Juergens
Jamie A. Price
Gallagher Sharp
Bulkley Building, 6th Floor
1501 Euclid Avenue
Cleveland, OH    44115

SEAN C. GALLAGHER, P.J.:

**{¶1}** Appellant Lawrence Vassil appeals from a judgment in favor of appellees Robert Gross and Gross & Gross, L.L.C., entered after a jury trial. Appellees cross-appealed. For the following reasons, we affirm the decision of the trial court.

**{¶2}** In *Vassil v. Gross & Gross*, *L.L.C.*, 8th Dist. Cuyahoga No. 94919, 2011-Ohio-1920, this court set out the factual background.

> On March 31, 2009, Vassil filed this complaint against [appellees] for legal malpractice in connection with the review of documents related to the sale of his industrial cleaning companies to State Industrial Products ("SIP"). Vassil alleged that in 2005, he owned the assets of Quality Cleansing Agents, Inc. ("Quality") and ILMC, Inc. In late 2005, Hal Uhrman, owner and chairman of SIP, contacted Vassil about purchasing the assets of Quality and ILMC, as well as Burns Chemical Systems, Inc. ("Burns"), a company whose assets Vassil had the option to acquire. In 2006, Vassil provided SIP with financial documents for the companies. Vassil further alleged that he purchased Burns while it was in foreclosure, and he created Clean All Systems, LLC ("Clean All") from that company. Vassil subsequently agreed to sell the companies to SIP for $8 million dollars and become an employee of SIP.

> In March 2007, SIP and its counsel[, William Barnett,] prepared a draft of an Asset Purchase Agreement ("APA") that set forth details of the purchases and indicated that the sellers had made certain financial statements that were "correct and complete" and were "in compliance with all federal, state, local and foreign statutes, regulations, ordinances and other provisions * * * concerning * * * pollution or protection of the environment[.]" SIP and its counsel also prepared a draft of an Employment Agreement that set forth the terms of Vassil's employment with SIP and indicated, in a cross-default provision, that SIP could terminate Vassil "for cause" if he "violated any provision of this Agreement or the Asset Purchase Agreement."
> Vassil hired Gross to represent him. Gross reviewed the drafts of the agreements. On March 22, 2007, Gross notified Vassil that he had some significant concerns and that he wanted to go over the draft with Vassil to determine what Vassil had specifically agreed to. Vassil and Gross subsequently discussed the matter over the telephone. Portions of

the agreements were changed. Gross raised additional concerns with Vassil, but in mid-April 2007, Vassil stopped communicating with Gross, and by April 17, 2007, SIP's general counsel dealt only with Vassil. Vassil executed the agreements on April 23, 2007, without Gross. Part of the transaction closed on that date, and a second closing was scheduled to occur on September 18, 2007.

The final version of the APA contained Vassil's warranties that certain financial statements were "correct and complete," and that the companies were in compliance with pollution and environmental protection laws. The final version of the Employment Agreement contained the cross-default provision that stated that SIP could terminate Vassil "for cause" if he "violated any provision of this Agreement or the Asset Purchase Agreement."

In August 2007, SIP informed Vassil that it had learned of inaccuracies in the warranties related to one of the companies and maintained that he had breached the APA. SIP indicated that under the cross-default provision, Vassil was subject to termination and it was entitled to a reduction in the purchase price.

On September 1, 2007, Vassil obtained new counsel, and on October 4, 2007, his new counsel entered into a "Standstill Agreement" with SIP and also agreed that Vassil would be placed on paid leave. On November 30, 2007, SIP filed a claim for arbitration under the terms of the APA, asserting that Vassil had breached representations and warranties set forth in the APA. SIP also sought a declaratory judgment that "Vassil's breach of the [APA] constitutes cause for his termination."

On December 10, 2007, Vassil filed a response to the arbitration claim and a counterclaim seeking a declaratory judgment that he did not breach the APA and that any termination by SIP would be without cause. He asserted that he had purchased one of the companies from a foreclosing bank and told SIP that the company and its records were in disarray. The second closing occurred as scheduled, but SIP placed $1,750,000 of the purchase price into escrow pending the outcome of the arbitration.

The arbitrator heard the matter in March 2008. On April 2, 2008, the arbitrator concluded that "no evidence shows that Mr. Vassil or Clean All intentionally provided incorrect data for the purpose of misleading claimant's officials." The arbitrator determined, however, that "the evidence shows that Acquisition is entitled to recover $196,562 for

environmental cleanup and waste inventory disposal * * * and $4,670 for unpaid personal property taxes[.]" The arbitrator ruled that SIP was entitled to a $216,169 reduction in the purchase price, and that SIP could terminate Vassil "for cause" under the cross-default provision of the Employment Agreement. SIP terminated Vassil the following day.

*Id.* at _ 2-9.

**{¶3}** Pertinent to the issues raised in this appeal, Vassil claimed that appellees committed legal malpractice by failing to properly advise him about the consequences of the cross-default clause or by failing to properly withdraw as his counsel prior to the consummation of the APA and the employment agreement. Prior to the jury trial on that issue, Vassil moved to preclude a portion of Mr. Barnett's videotaped deposition testimony. Mr. Barnett testified to being SIP's legal counsel and "actively involved" in both the APA and the employment deal with Vassil. Barnett prepared the employment agreement. Barnett further testified that he inserted the cross-default clause into Vassil's employment agreement because of the deletion of another clause that was meant to protect SIP's interests in the event Vassil breached the terms of the APA. Vassil objected to the following portion of Barnett's testimony:

Q: Once this cross default language was added to Mr. Vassil's employment agreement was it non-negotiable?

* * *

A: We wouldn't have taken it out.

Q: Okay. It was important that the cross default provision remain in the contract?

A: Yes.

Q: And as general counsel for [SIP] that was your call?

A: Was it my call? Probably.

The trial court overruled Vassil's objection, and the jury rendered a general verdict in favor of the appellees.

{¶4} Vassil timely appeals the trial court's evidentiary decision, raising as the sole assignment of error:

> The trial court committed reversible error and abused its discretion when it overruled [Vassil's] objections, thereby allowing the jury to hear prejudicial and speculative testimony that was beyond the witness's personal knowledge.

We find no merit to Vassil's assigned error.

{¶5} Before addressing Vassil's arguments, we note that appellees filed a cross-appeal that advanced an assignment of error that provides the following:

> The trial court erred in denying [appellees'] oral motion for directed verdict on the grounds that [Vassil's] expert witnesses did not offer their opinions to a reasonable degree of certainty as required by Ohio law.

In light of the fact that the jury rendered a general verdict in favor of appellees, our resolution of Vassil's assigned error, sustaining the judgment in favor of appellees, moots the single issue raised in the cross-appeal.

{¶6} Generally, the admission of evidence lies within the broad discretion of the trial court. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 239, 2005-Ohio-4787, 834 N.E.2d 323. A reviewing court will uphold an evidentiary decision absent an abuse of discretion. *Id.* Further, even if an abuse of discretion is found, a judgment will not be overturned unless the erroneous admission of that evidence has affected the substantial

rights of the adverse party or is inconsistent with substantial justice. *Id.* "Abuse of discretion connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342, 695 N.E.2d 1140, citing *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982). In the current case, we cannot say the trial court abused its discretion in admitting Barnett's testimony in the first place.

{¶7} Vassil's sole argument is that Barnett's testimony about the importance of the cross-default clause to SIP is entirely speculative because Barnett does not have first-hand knowledge and is speculating that SIP would never remove the language. According to Vassil, the trial court should have excluded that testimony pursuant to Evid.R. 602, which states in pertinent part that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." If the statements were excluded, Vassil argues, the jury necessarily would have found appellees negligent. We disagree with Vassil's characterization of the objected-to statements.

{¶8} Barnett's testimony is not impermissibly speculating on future conduct; in fact, he was not asked to answer the hypothetical question that invites a speculative answer. *See Evanston Bank v. Brinks, Inc.*, 853 F.2d 512, 515 (7th Cir.1988). Instead, he merely indicated the importance of the cross-default clause for SIP and, at the time he included the clause in the draft employment agreement, it was non-negotiable according to him. Both are facts within Barnett's personal knowledge as the drafter of the

employment agreement at the time the contract was written. When the entirety of Barnett's testimony is read in conjunction with the allegedly objectionable questions, it is apparent that he testified to the reasons for including the cross-default clause and the sheer importance of it given the removal of another clause intended to protect SIP's interests in the event of a default by Vassil. Further, Barnett established his personal knowledge of the events surrounding the drafting of the employment agreement, by specifically indicating that he was responsible for drafting the employment agreement in his role as adviser to SIP's corporate officers. That SIP's corporate officers have final authority to negotiate the terms of the deal between Vassil and SIP does not prevent Barnett from having first-hand knowledge of the draft versions of the employment agreement.

{¶9} In short, although appellees attempted to draw an inference that the deal would have failed based on Barnett's statements, his statements themselves do not enter that hypothetical realm and merely explain his experiences and intentions at the time he drafted the employment agreement, which included the cross-default clause. In this context, we cannot say the trial court abused its discretion in permitting the admission of Barnett's statements. Vassil did not proffer a valid basis to preclude the admission of those statements, and the trial court, therefore, did not err in admitting the evidence. In light of this, we need not delve into the issue of substantial prejudice nor the issue raised in the cross-appeal. Appellees' cross-appeal is dismissed as moot.

{¶10} The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR