BEN FOLLOWELL, d/b/a Followell Construction Company, Plaintiff-Appellant, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellee.

Fifth District   No. 5—95—0280

Opinion filed April 9, 1996.

Thomas F. Crosby, of Winters, Brewster, Crosby & Patchett, of Marion, for appellant.

Gary B. Nelson, of Feirich/Mager/Green/Ryan, of Carbondale, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff appeals from a Franklin County circuit court's entry of summary judgment in favor of the defendant, Central Illinois Public Service Company. The plaintiff contends that the trial court improperly construed section 9 of the Illinois Underground Utility Facilities Damage Prevention Act (220 ILCS 50/9 (West 1994)) to bar its claim.

On July 15, 1990, the plaintiff began working under a contract with the City of West Frankfort, Illinois, to replace certain existing water mains and water meters. Because much of the work would

involve excavations, the plaintiff properly notified the utility owners of the location where the work was to be done and requested that the utilities locate and mark the approximate location of their underground facilities pursuant to the Illinois Underground Utility Facilities Damage Prevention Act (Act) (220 ILCS 50/1 *et seq.* (West 1994)).

■ The defendant was the franchise holder for the distribution of natural gas in the City of West Frankfort. The defendant owned and operated a substantial number of underground facilities near the sites of plaintiff's planned excavations. The plaintiff properly notified the defendant, and it agreed to locate and mark the approximate location of its underground facilities. "Approximate location" is defined as "a strip of land at least 3 feet wide but not wider than the width of the underground facility *** plus 1¹/₂ feet on either side." 220 ILCS 50/10 (West 1994).

Plaintiff alleges that the defendant negligently mislocated and mismarked many of its underground facilities. According to the plaintiff, the result of the defendant's mismarking was physical damage to the line caused by the plaintiff's trencher or backhoe. For obvious safety reasons, the plaintiff would have to halt all work until the defendant repaired the line. Plaintiff claims that the work stoppage or "downtime" cost it approximately $400 per hour in wages for idled employees, rental fees for idled equipment, lost time, lost superintendent fees, and other administrative charges associated with the management and repair of the line breaks.

The plaintiff sought reimbursement from the defendant for the downtime costs and lost profits incurred as a result of the defendant's alleged negligent mislocation and mismarking. The defendant refused to reimburse the plaintiff. The plaintiff filed this action seeking recovery under section 9 of the Act for the defendant's negligence resulting in "damages to persons, material or equipment." On the defendant's motion for summary judgment, the trial court found that the statute restricts damages to "persons, material, or equipment" and that the plaintiff, a business entity, had not suffered any physical damage and thus it "suffered no damage to persons, materials or equipment." The court also found that the plaintiff could not recover under the Act for damages incurred prior to the effective date of the Act. The trial court entered summary judgment in favor of the defendant. Plaintiff now appeals.

The plaintiff contends that the trial court erred in finding that the plaintiff suffered no damage to "persons, material or equipment." Specifically, the plaintiff takes issue with the court's conclusion that purely economic damages would not support a cause of action. The plaintiff argues that it is a "person" as defined by section 2.1 of the

Act (220 ILCS 50/2.1 (West 1994)), and that section 9 of the Act clearly intends a person suffering damage as a result of an owner/operator's negligence to recover "damages" without regard to whether those damages are purely economic or physical.

The defendant conceded in its brief and at oral argument that a business entity like the plaintiff is a "person" as defined by the Act. The defendant argues, however, that the trial court correctly determined that the plaintiff's damages were not recoverable under the Act or under a common law negligence theory because plaintiff's damages are purely economic and purely economic damages are not recoverable in tort actions.

■ Purely economic damages are generally not recoverable in tort actions. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). The *Moorman* court determined that the seller of an allegedly defective grain storage tank was not liable to the buyer based on tort theories of negligence, strict liability in tort, or innocent misrepresentation, where the buyer had suffered only economic loss, which in that case was the cost of repairing the tank or the loss of the tank's use. *Moorman*, 91 Ill. 2d at 81, 435 N.E.2d at 448. The court went on to define economic loss in general as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman*, 91 Ill. 2d at 82, 435 N.E.2d at 449. Plaintiff's damages for downtime costs and lost profits in the instant case fit squarely within the *Moorman* court's definition of economic damages.

*Moorman* articulated three exceptions to the economic damages rule: (1) where the plaintiff has sustained damages as a result of a sudden or dangerous occurrence (*Moorman*, 91 Ill. 2d at 86, 435 N.E.2d at 450); (2) where the plaintiff's damages are the result of an intentional false misrepresentation, *i.e.*, fraud (*Moorman*, 91 Ill. 2d at 88-89, 435 N.E.2d at 452); and (3) where the defendant is in the business of supplying information for the guidance of others in their business transactions and is negligent in providing the information. *Moorman*, 91 Ill. 2d at 88-89, 435 N.E.2d at 452. We believe that the plaintiff's cause of action falls within the third exception to the *Moorman* doctrine.

■ Section 10 of the Underground Utility Facilities Damage Prevention Act provides in part, "Upon notice by the person engaged in excavation or demolition, the persons owning or operating underground facilities *** shall mark, within 48 hours *** of receipt of notice, the approximate locations of such facilities so as to enable the person excavating or demolishing to establish the location of the

underground utility facilities ***." 220 ILCS 50/10 (West 1994). This statute imposes a duty on the defendant as the owner or operator of underground facilities to supply information about the location of the underground facilities to the plaintiff or any other person properly giving notice of an intention to excavate or demolish. The defendant is clearly engaged in the business of supplying information concerning the location of its underground facilities to persons like the plaintiff who must rely on the information in order to engage in excavations.

The question then becomes whether the legislature intended to create a cause of action for a plaintiff to recover purely economic damages in tort when it provided for a finding of an owner's *prima facie* negligence in cases where the facilities are mislocated. 220 ILCS 50/9 (West 1994). We believe that it did.

Section 9 creates the plaintiff's cause of action. Section 9 provides, "When it is shown by competent evidence in any action for damages to persons, material or equipment brought by persons undertaking excavation or demolition acting in compliance with the provisions of this Act that such damages resulted from the failure of owners and operators of underground facilities *** to comply with the provisions of this Act, those owners and operators shall be deemed prima facie guilty of negligence." 220 ILCS 50/9 (West 1994).

■ First, we have already established and the defendant has conceded that for the purposes of this Act, the plaintiff is a person. Second, the plaintiff has alleged it has been injured and suffered economic damages as a result of the defendant's breach of its statutory duty. Third, we have found that the plaintiff's cause of action for economic damages falls within an exception to the ban on recovery of purely economic damages in tort actions. Finally, the plain language of the Act does not restrict the damages a plaintiff may recover under the Act to "actual" or "physical" damages, as the defendant would have us hold. Therefore, we hold that in this instance, where a person suffers purely economic damages as a result of an owner's breach of its duty under section 10 of the Act, that person may bring an action under section 9 for purely economic damages.

■ The plaintiff next contends that the trial court's summary judgment should not preclude it from recovering its losses under the common law for those damages incurred prior to the effective date of the Act. In response, the defendant again points to the *Moorman* doctrine and claims that purely economic damages are not recoverable in common law tort actions. The defendant's claim that the *Moorman* doctrine bars the plaintiff's claim under the common law is without merit given our finding that the plaintiff's cause of action falls within an exception to the general rule enunciated by the *Moorman* court.

We have reviewed the plaintiff's complaint and find, however, that it pleads only a statutory cause of action. The plaintiff did not plead for a recovery under common law negligence for those damages which occurred prior to the effective date of the Act. Therefore, the issue of whether recovery may be made for alleged negligent conduct prior to the effective date of the Act was not before the trial court and is not before us. The issue may have been raised in argument or by motion, but judgment cannot be granted for or against a party on a cause of action never pleaded in the complaint. To the extent that the trial court purported to enter summary judgment on claims that predated the Act, that ruling is reversed because the issue simply was not raised by the complaint that was before the court.

For the foregoing reasons, the judgment of the Franklin County circuit court is reversed, and the cause is remanded for further proceedings consistent with this disposition.

Reversed and remanded.

CHAPMAN and KUEHN, JJ., concur.