FIRST DIVISION

October 21, 2002

No.  1-00-3743

)

ILLINOIS BELL TELEPHONE COMPANY, ) Appeal from the

d/b/a Ameritech Illinois, ) Circuit Court of

an Illinois Corporation, ) Cook County,

   )

Plaintiff and Counterdefendant-Appellee,)

) Nos. 98 L 2870

)

)

PLOTE, INC., )

an Illinois Corporation, ) Honorable

) James F. Henry,

Defendant ) Judge Presiding.

_________________________________________________________________

(Plote, Inc., an Illinois Corporation, )

Allied Asphalt Paving Company, an )

Illinois Corporation, and Milburn )

Brothers, Inc., an Illinois )

Corporation, an Illinois Joint )

Venture, )

)

Counterplaintiffs-Appellants). )

)

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Counterplaintiffs, Plote, Inc., Allied Asphalt Paving Company and Milburn Brothers, Inc. (collectively Plote or plaintiff), appeal from the judgement of the circuit court of Cook County granting a motion pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)) in favor of counterdefendant Illinois Bell Telephone Company, d/b/a Ameritech Illinois (Bell or defendant), dismissing counts II, III, IV and V of Plote's lawsuit against Bell.  On appeal, Plote contends that its suit is not barred by the 
Moorman
 doctrine 
(Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E. 2d 443 (1982)); that it has a cause of action under both the Illinois Underground Utility Facilities Damage Prevention Act (220 ILCS 50/1 
et seq
. (West 1996)) and the Illinois Highway Code (605 ILCS 5/1-101 
et seq
.; and that it properly stated a cause of action for tortious interference with a contract.  We affirm in part, reverse in part and remand for further proceedings.

BACKGROUND

Plote's first amended counterclaim makes the following general allegations.  Plote entered into a contract with the Illinois Department of Transportation (IDOT) to make improvements to Arlington Heights Road in the city of Arlington Heights, Illinois.  Prior to accepting bids for the above-described contract, IDOT submitted the proposed plans for the construction project to Bell so that Bell could locate conflicts between the project and Bell's underground telephone facilities.  Bell, however, did not respond to IDOT's request that it identify the anticipated conflicts.  Alternatively, Plote alleges that Bell did not fully respond to IDOT's requests to identify anticipated conflicts.  On August 8, 1995, a preconstruction conference was held at IDOT's offices.  At this conference a representative of Bell was informed of the date on which the construction project was expected to start.  

Beginning on December 13, 1995, a series of "utility meetings" was held at which various conflicts relating to Bell's facilities were identified.  As a result of Bell's failure to identify the location of its facilities, or alternatively as a result of Bell's failure to adequately identify those facilities, the construction project was delayed.  Pursuant to the contract, Plote was to complete the project by October 31, 1996; however, due to the delays, it was not completed until May 31, 1997.  Plote sustained increased expenses as a result of these delays.

The first amended counterclaim alleges three counts pertinent to this appeal.  Count II purports to state a claim for a violation by Bell of the Illinois Underground Utility Facilities Damage Prevention Act (Underground Facilities Act) (220 ILCS 50/9 (West 1996)).  Count III purports to state a claim for common law negligence.  Count IV purports to state a claim for a violation by Bell of the Illinois Highway Code (605 ILCS 5/9-113(f) (West 1996)).  Count V purports to state a claim for tortious interference with contract.
(footnote: 1)
 On June 16, 1999, Bell filed a motion to dismiss Plote's first amended counterclaim in its entirety pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)).  Bell argued that counts II, III and IV were barred under the 
Moorman
 doctrine.  Bell further argued that count V failed to state a cause of action because it failed to allege that Bell intended to interfere with Plote's contract with IDOT.  The trial court subsequently granted Bell's section 2-615 motion and dismissed counts I, II, III, IV and V.  

Plote filed its second amended counterclaim on December 1, 1999.  This counterclaim made changes to count I and V, and added counts VI and VII.
(footnote: 2)  The second amended counterclaim realleged the general allegations made in the first amended counterclaim.  It also realleged counts II, III and IV verbatim.  Bell subsequently filed a motion to dismiss pursuant to sections 2-619 (735 ILCS 5/2-619 (West 2000)) and 2-615.  Bell again argued that count V failed to make allegations that its interference with Bell's contract was intentional.  Bell's motion does not address counts II, III and IV, except to note in a footnote that "although not so noted in its counterclaim, the undersigned counsel has confirmed with *** counsel for Plote, that counts II, III and IV were re-pled solely for the purpose of preserving Plote's appellate rights."  The court granted Bell's motion and dismissed counts I, V, VI and VII. This appeal followed.

ANALYSIS

Plote first argues that the trial court erred in dismissing count II of the complaint, which purports to state a claim for a violation by Bell of the Illinois Underground Utility Facilities Damage Prevention Act.  220 ILCS 50/9 (West 1996).  Plote contends that it is not barred by the 
Moorman
 doctrine from recovering economic losses for Bell's alleged failure to properly mark the location of its underground facilities, which delayed Plote's construction project.  We agree.

The 
Moorman
 doctrine, promulgated by our supreme court in 
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E.2d 443 (1982), established the rule known as the economic loss doctrine as the law in Illinois.  The 
Moorman
 doctrine provides that "a plaintiff cannot recover solely economic losses in tort."  
Redarowicz v. Ohlendorf
, 92 Ill. 2d 171, 176, 441 N.E.2d 324, 326 (1982); 
Moorman
, 91 Ill. 2d at 86, 435 N.E.2d at 451.  Our supreme court, however, has defined several exceptions to the 
Moorman
 doctrine.  These exceptions include the "information provider" exception, which allows recovery in tort for economic losses "where the plaintiff's damages are a proximate result of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions."  
In re Illinois Bell Switching Station Litigation
, 161 Ill. 2d 233, 240-241, 641 N.E.2d 440, 443-44 (1994).
(footnote: 3)  See 
Moorman
, 91 Ill. 2d at 89, 435 N.E.2d at 452 (allowing recovery for economic losses against those who are "in the business of supplying information for the guidance of others," thereby upholding the right of recovery under 
Rozny v. Marnul
, 43 Ill. 2d 54, 250 N.E.2d 656 (1969), which allowed recovery of economic damages against a surveyor)
.

 Plote urges that the information provider exception applies to Bell in this case because all Bell was required to do in this situation was provide information about the location of its facilities.  Plote contends that the determination of whether  Bell is an information provider is made by looking to the context of the specific transaction involved and not on the basis of Bell's general business.  Bell contends that it does not fall within the information provider exception because its primary business is to supply telephone service and not information, even though its function under the circumstances contemplated by the Underground Facilities Act is solely to provide information.  We agree with Plote.

Section 10 of the Underground Facilities Act provides in relevant part as follows:

"Upon notice by the person engaged in excavation or demolition, the person owning or operating underground utility facilities *** shall mark, within 48 hours (excluding Saturdays, Sundays and holidays) of receipt of notice, the approximate locations of such facilities so as to enable the person excavating or demolishing to establish the location of the underground utility facilities or CATS facilities."  220 ILCS 50/10 (West 1996).

This statute provides that the limit of Bell's obligations in the case at bar was to provide information to Plote regarding the location of its underground facilities.  Thus, in the context of the Underground Facilities Act, Bell is imposed with the duty of being nothing but an information provider.  

Although cited only by defendant in a footnote, the decision of the Fifth District of this court in 
Followell v. Central Illinois Public Service Co.
, 278 Ill. App. 3d 1103, 663 N.E.2d 1122 (1996), is squarely on point.  The facts in that case are virtually identical to the facts in the case at bar.  In 
Followell
, the plaintiff contractor was hired by the City of West Frankfort, Illinois, to replace several water mains.  The plaintiff contacted the defendant natural gas utility company and asked that the defendant mark the locations of its lines which conflicted with excavations which the plaintiff would need to undertake in the course of its water main work.  The plaintiff alleged that the defendant negligently marked the location of its lines, and the defendant allegedly broke one of the plaintiff's gas lines as a result.  The plaintiff had to stop work until the defendant repaired the gas line, thus incurring economic losses, for which it sued the defendant.

The court reasoned that section 9 of the Act created a private cause of action for a violation of section 10.  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125; 220 ILCS 50/9 (West 1994).  The court finally noted that "the plain language of the Act does not restrict the damages a plaintiff may recover under the Act to 'actual' or 'physical' damages."  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125.  The court then held "that in this instance, where a person suffers purely economic damages as a result of an owner's breach of its duty under section 10 of the Act, that person may bring an action under section 9 for purely economic damages."  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125.  The court thus held that the plaintiff could recover for its economic losses.  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125; accord

A&L Underground, Inc. v. City of Port Richey
, 732 So. 2d 480, 481 (Fla. App. 1999).

The 
Followell
 court held that the defendant had an independent duty to supply information to the plaintiff regarding the location of its underground facilities.  The court reasoned:

"This statute imposes a duty on the defendant as the owner or operator of underground facilities to supply information about the location of the underground facilities to the plaintiff or any other person properly giving notice of an intention to excavate or demolish.  The defendant is clearly engaged in the business of supplying information concerning the location of its underground facilities to persons like the plaintiff who must rely on the information in order to engage in excavations."  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125.

Thus, the court held that the statute created an independent duty upon the defendant to provide information and thus, in the context of that statute defendant was deemed to be in the business of supplying information.  
Followell
, 278 Ill. App. 3d at 1107, 663 N.E.2d at 1125.  

Accordingly, as in 
Followell
, the factual situation in the case at bar falls within the information-provider exception to the 
Moorman
 doctrine.  In this particular case, Bell has the same duty that the utility company had in 
Followell
 to provide information to Plote, which originates in a statute, section 10 of the Underground Facilities Act.  As in 
Followell
, the transaction between Bell and Plote created by the provisions of the Underground Facilities Act does not extend beyond the provision of information.  While Bell's general business may be providing telephone service, as in 
Followell
, it is the nature of the transaction at issue in the specific case on an 
ad hoc
 basis that is determinative.  
Cf.
 
Tolan & Son, Inc. v. KLLM Architects, Inc.
, 308 Ill. App. 3d 18, 719 N.E.2d 288 (1999).  We thus find that the trial court erred in dismissing count II of Plote's complaint.  

Bell argues the applicability of 
Fireman's Fund Insurance Co. v. SEC Donohue, Inc.
, 176 Ill. 2d 160, 679 N.E.2d 1197 (1997), to the instant case.  However, we find several significant distinctions between the facts presented there and those presented to us here.  In 
Fireman's Fund
, our supreme court addressed the question:

"'Is a professional engineer who prepares plans and specifications for a construction project in the business of supplying information to others for the guidance of the recipient in its business dealings and liable in tort for negligent misrepresentation under 
Moorman
 ***[?]'"  
Fireman's Fund
, 176 Ill. 2d at 166, 679 N.E.2d at 1200.

The court answered the question in the negative, holding that the economic loss doctrine barred a contractor's tort suit against the project engineer whose drawings allegedly miscalculated the site for a water supply system.  
Fireman's Fund
, 176 Ill. 2d at 169, 679 N.E.2d at 1201.  The court reached this answer through the application of a two-pronged analysis, and both prongs reveal the distinctions between the facts presented in 
Fireman's Fund
 and those presented in this case.

The first prong of the
 court's analysis centered on the applicability of the economic loss doctrine to service providers who distribute information as part of their services
.  The court noted that sound policy dictates that a service provider, such as an engineer, generally should be protected by the doctrine because the duties of a service provider may well be defined by its contract with a client as may the duties of any other seller.  The economic loss doctrine seeks to protect the integrity of contract law and to force plaintiffs whose damages, in essence, equal their commercial expectations to sue on their bargained-for agreement.  Thus, the court concluded, the doctrine should be applied to contractual relationships between service providers and clients.  
Fireman's Fund
, 176 Ill. 2d at 166-68, 679 N.E.2d at 1200-01.

In the instant case, however, Bell's duties and obligations to Plote are not defined by a contract because there is no contract between the parties.  The nature of the duty is wholly created and defined by statute under the provisions of the Underground Facilities Act.  As the 
Fireman's Fund
 court noted:

"'The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client.  Where a duty arises outside the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'"  
Fireman's Fund
, 176 Ill. 2d at 167, 679 N.E.2d at 1200, quoting 
Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.
, 159 Ill. 2d 137, 161-62, 636 N.E.2d 503 (1994). 

Because Bell's duty to Plote is not the result of any contract, but only defined by statute, the policy concerns underlying the application of the economic loss rule are not triggered in this case.  Plote is not seeking the benefit of its bargain via a tort suit rather than through more appropriate contract remedies.

The second prong of the 
Fireman's Fund
 court's analysis was premised upon its conclusion that the applicability of the economic loss doctrine depends upon whether the information provider is supplying information that is incidental to a tangible product.  The court reasoned that if the "ultimate result" of the information is a tangible product, then the doctrine should apply.  
Fireman's Fund
, 176 Ill. 2d at 168-69, 679 N.E.2d at 1201.  As this court has recently reiterated, "[i]n short, if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception."  
Tolan
, 308 Ill. App. 3d at 28, 719 N.E.2d at 296, quoting 
MW Manufacturers, Inc. v. Friedman Corp.
, slip op. at ____ No. 97 C 8319, N.D. Ill. July 21, 1998).  Because the defendant engineering firm in 
Fireman's Fund
 provided plans for building a water supply system, the court concluded that it was hired to create a tangible thing and did not fit into the information provider exception.  
Fireman's Fund
, 176 Ill. 2d at 169, 679 N.E.2d at 1201.  

In the case 
sub judice
, Bell was not hired to "create a product, a tangible thing" but was instead statutorily obligated simply to provide information to Plote about the location of its facilities so as to avoid damage to those facilities during Plote's road construction project.  Bell's information was not to be incorporated into a product or structure but was merely to be used to avoid causing the public any harm from utility disruption.  The only "product" that Bell had a duty to contribute was information and the "ultimate result" was avoidance of damage to Bell's facilities, not the creation of a structure or tangible object itself.

Finally we note that Bell's reliance on 
Northern Illinois Gas Co. v. Vincent DiVito Construction
, 214 Ill. App. 3d 203, 573 N.E.2d 243 (1991), is misplaced.  
Northern Illinois Gas
 does not address the information provider exception, which we have found applicable herein, nor does it address a situation to which that exception is applicable. 
 In 
Northern Illinois Gas,
 the plaintiff contractor sued the defendant gas company for economic losses it suffered when it damaged one of the defendant's gas lines thereby delaying plaintiff's construction project.  Plaintiff contended that defendant was negligent because the gas line was not buried sufficiently far beneath the surface.  There is nothing in 
Northern Illinois Gas
 that would pertain to any breach of duty involving the supply of information.

Plote next contends that the trial court erred in dismissing count III, which purported to state a claim against Bell based on common law negligence.  Plote contends that this count is not barred by the 
Moorman
 doctrine.  We disagree.

The same reasons that compel us to reverse the dismissal of count II compel us also to affirm the dismissal of count III.  Unlike court II, where a statute is pled so as to provide Bell with an obligation to provide information to Plote, count III is pled as a common law cause of action and is not based on the Underground Facilities Act or any other statute.  Count III thus contends that Bell owed Plote a duty at common law to mark the location of its underground facilities.  

Plote, however, has not argued or cited any authority for the proposition that Bell has a common law duty to mark the location of its facilities in order to avoid causing Plote economic losses.  Furthermore, our research has indicated that no such common law duty exists.  
Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.
, 29 S.W.3d 282, 289 (Tx. Ct. App. 2000)
 (no duty exists for a utility to avoid economic losses by marking the location of its facilities under Texas common law); 
cf.
 W. Keeton, Prosser & Keeton on Torts §92, at 657 (5th
 ed. 1984) ("there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things"); accord 
Springfield Hydroelectric Co. v. Copp
, 779 A.2d 67, 70 (Vt. 2001); 
Weisblatt v. Chicago Bar Ass'n
, 292 Ill. App. 3d 48, 58, 684 N.E.2d 984, 990 (1997) (to establish a common-law claim for negligent representation a plaintiff must allege, 
inter alia
, "a false statement of material fact" and "carelessness or negligence in ascertaining the truth of the statement by defendant").  The Illinois case of 
Diaz v. Krob
, 264 Ill. App. 3d 97, 100, 636 N.E.2d 1231, 1233 (1994), is also helpful.  There the court held that where the plaintiff was hit by a car while crossing the street after being waved across the street by a school bus driver, the bus driver had no duty to provide accurate information.  We note that in this case, unlike 
Diaz
, plaintiff has not alleged that Bell made any false statements, or for that matter any affirmative statements at all.
  Thus, without even reaching a 
Moorman
 analysis the complaint fails to establish any duty on the part of Bell at common law to supply the information required under the statute.

Plote next argues that the trial court erred in dismissing count IV of its complaint because it has adequately stated a cause of action under the Illinois Highway Code.  We disagree.

"In order to recover for a defendant's violation of a statute or rule designed to protect human life or property, a plaintiff must show [
inter alia,
 that his injury is] *** the kind of injury which the rule sought to prevent."  
Gouge v. Central Illinois Public Service Co.
, 144 Ill. 2d 535, 543, 582 N.E.2d 108, 112 (1991).  Section 9-113(f) of the Illinois Highway Code (605 ILCS 5/9-113(f)(West 2000)) states in relevant part as follows:

"Any ditches, drains, track, rails, poles, wires, pipe line or other equipment located, placed or constructed upon, under or along a State highway with the consent of the State highway authority under this Section shall, upon written notice by the State highway authority be subject to removal, relocation or modification at no expense to the State highway authority when and as deemed necessary by the State highway authority for highway or highway safety purposes."  605 ILCS 5/9-113(f)(West 2000).

This statute establishes that the highway authority may move facilities that infringe on its easement.  This statute does not purport to impose any duty upon a utility to provide information to anyone, and in no event does it impose a duty to supply information to private contractors.  Nothing in this statute indicates that its purpose is to protect Plote or other contractors from economic losses.  Rather, this statute gives the state highway authority the power to subject objects on its highways to removal upon its written notice.  We thus find that Plote has no private cause of action based on section 9-113 of the Highway Code. 
Cf.
 
Swope v. Northern Illinois Gas Co.
, 251 Ill. App. 3d 850, 857-58, 623 N.E.2d 841, 846 (1993) (no private cause of action was available to the plaintiff under section 9-113 for injuries sustained in a car accident because the statute was not intended to protect against that type of injury).  As is the case with respect to count III, since Plote has no cause of action based on this statute, we do not reach any 
Moorman
 issues with respect to that count.

Finally, Plote argues that the trial court erred in dismissing count V of its complaint.  Plote contends that count V properly states a cause of action for intentional interference with a contract.  Bell contends that Plote has failed to plead such a cause of action because Plote had not alleged that Bell acted intentionally or that Bell's actions were unjustified.  We agree with Bell.

Here, too, as is the case with respect to counts III and IV, Plote has not shown that Bell owed it any duty not to interfere with Plote's contract with IDOT by providing information concerning the location of its underground facilities.  However, even if we were to graft the duty imposed by the Underground Facilities Act onto this cause of action, Plote would not prevail because Plote has failed to plead intentionality.  

"In order to establish an action for intentional interference with contract, a plaintiff must plead and prove [,
inter alia
,]*** defendant's intentional and unjustified inducement of [a] third party to breach [a] contract."  
Strosberg v. Brauvin Realty Services, Inc.
, 295 Ill. App. 3d 17, 32, 691 N.E.2d 834, 845 (1998).  "A necessary prerequisite to the maintenance of an action for tortious interference with contract is a defendant's intentional and unjustified inducement of a breach of contract."  
Strosberg
, 295 Ill. App. 3d at 33, 691 N.E.2d at 845; 
Futurevision, Inc. v. Dahl
, 139 Ill. App. 3d 61, 66, 487 N.E.2d 127, 131 (1985).   

In the case at bar, Plote has not pled that Bell 
intentionally
 caused Plote to breach its contract with IDOT or that Bell 
intended
 to cause Plote harm.  The trial court's dismissal of count V was thus correct.  

Plote's reliance on 
HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.
,131 Ill. 2d 145, 545 N.E.2d 672 (1989), is misplaced.  
HPI
 stands for the proposition that a plaintiff in a interference with contract action does not need to prove that the defendant's conduct was malicious or unjustified unless that defendant's conduct was privileged.  
HPI
, 131 Ill. 2d at 157, 545 N.E.2d at 677.  Plote thus argues that since Bell's conduct was not privileged, it need not plead that Bell's conduct was unjustified or malicious.  Nothing in 
HPI
, however, limits the element of intentionality to cases where the defendant's conduct was privileged.  Plote was thus required to plead that Bell acted intentionally, which Plote did not do. 

For the reasons discussed above, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and this cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

McBRIDE and CAHILL, JJ., concur.

FOOTNOTES
1:
Count I purported to state a claim under the Illinois Public Utilities Act (220 ILCS 5/5-201 (West 1992)), and is not at issue in this appeal. 

2:
Count VI purported to state a claim for breach of contract, and count VII purported to state a claim for breach by Bell of a highway permit issued by the State of Illinois, of which Plote contended it was a third-party beneficiary.  Neither count is relevant to the instant appeal.

3:
The other exceptions mentioned include "where the plaintiff has sustained damage resulting from a sudden or dangerous occurrence" and "where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud)."  
In re Illinois Bell
, 161 Ill. 2d at 240-241, 641 N.E.2d at 443-44.